[Cite as *Delta Fuels, Inc. v. Ohio Dept. of Transp.*, 2015-Ohio-5545.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| Delta Fuels, Inc., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-28 |
| v. | : | (Ct. of Cl. No. 2006-03265) |
| Ohio Department of Transportation, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |
| | | |
| Ohio Department of Transportation, | : | |
| Plaintiff-Appellant, | : | |
| | | |
| v. | : | |
| | | No. 15AP-206 |
| Delta Fuels, Inc., | : | (Ct. of Cl. No. 2006-03265) |
| Defendant-Appellee, | : | (REGULAR CALENDAR) |
| Knight Enterprises, Inc. et al., | : | |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on December 31, 2015

*Wickens*, *Herzer*, *Panza*, *Cook & Batista Co.*, and *Joseph E. Cirigliano*; *Giarmarco*, *Mullins & Horton*, *PC*, and *Daniel J. Kelly*; and *Ben M. Gonek*, for Delta Fuels, Inc.

*Michael DeWine*, Attorney General, *William C. Becker*, and *Craig D. Barclay*, for Ohio Department of Transportation.

APPEALS from the Court of Claims of Ohio

SADLER, J.

{¶ 1}   This decision addresses two appeals from the Court of Claims of Ohio arising out of an unusual procedure in which the court held a simultaneous bench and jury trial to assess certain claims related to a 2005 Toledo-area fuel spill.  In case No. 15AP-28, plaintiff-appellant, Delta Fuels, Inc. ("Delta Fuels"), appeals from the court's December 12, 2014 bench trial judgment finding in favor of defendant-appellee, Ohio Department of Transportation ("ODOT"), on Delta Fuels' negligence, breach of contract, and breach of implied warranty claims.  In case No. 15AP-206, plaintiff-appellant, ODOT, appeals from the court's March 6, 2015 judgment denying ODOT's motion for judgment notwithstanding the verdict and motion for new trial on ODOT's negligence counterclaim, which, pursuant to ODOT's demand, was tried to a jury and produced a verdict in favor of Delta Fuels.[1]  For the reasons that follow, we affirm the judgment of the trial court in both instances.

## I.  BACKGROUND

{¶ 2}   Delta Fuels owns and operates a petroleum terminal facility in Toledo, consisting of five above-ground storage tanks, each capable of holding approximately 2.5 million gallons of fuel, surrounded by a secondary containment system.  In this context, a secondary containment system is, in simple terms, a barrier intended by law to be "sufficiently impervious" to contain a spill equivalent to the facility's largest tank, plus a certain buffer percentage, long enough to allow the owner to recapture the gasoline.  (Tr. 793.)

{¶ 3}   On the morning of November 25, 2005, the Friday after Thanksgiving, a Delta Fuels employee inadvertently released over 100,000 gallons of gasoline from an above-ground storage tank.  The gasoline escaped underneath the surrounding secondary containment system, entered state land where ODOT was coordinating construction of an entrance and exit ramp to the Veterans Skyway Bridge, and nearly reached the Maumee River.

---

[1] ODOT's notice of appeal states that it also appeals from the court's December 12, 2014 judgment, which in addition to stating a decision on Delta Fuels' claim, also memorialized the jury verdict on ODOT's counterclaim.  However, ODOT's assignments of error and briefs on appeal challenge the judge's decision to deny ODOT's motions for judgment notwithstanding the verdict and new trial.

{¶ 4}   Litigation giving rise to this appeal commenced on April 24, 2006, with Delta Fuels filing a complaint in the Court of Claims against ODOT alleging negligence, breach of contract, and breach of implied warranties.[2]   On June 7, 2006, ODOT filed an answer and counterclaim.   ODOT subsequently amended its answer and counterclaims several times, with the last amendment filed on February 27, 2014.   ODOT's original and amended answers and counterclaims included attached, endorsed jury demands.   On April 10, 2014, for the first time, Delta Fuels filed its own general demand for a jury trial.

{¶ 5}   The case proceeded to trial from November 10 through November 19, 2014. In a rare combined bench and jury trial, the judge and the jury heard evidence pertaining to both Delta Fuels' claim and to ODOT's counterclaim.   The judge discussed with the jury and with the attorneys the unusual split nature of the proceeding, which the judge thought to have occurred only once before in the Court of Claims.   Neither party objected to the nature of the proceeding.

{¶ 6}   Delta Fuels' theory for its negligence claim centered on ODOT's relocation of Delta Fuels' private waterline to just a few feet from the base of its secondary containment system. Delta Fuels presented evidence that its clay-based secondary containment system could hold water prior to the waterline construction and, therefore, could theoretically hold fuel and that ODOT's engineers owed a duty to design and construct the ramp project, including relocation of the waterline, in a manner that did not adversely affect its neighbors.   Specifically, Delta Fuels' experts opined that ODOT's location of the new waterline approximately four feet from the foot of the berm with a trench wall cut just two and one-half feet from the foot of the berm, ODOT's use of a granular base to bed the waterline, and ODOT's construction of a connected sewer approximately one hundred yards away at a depth of seventeen feet, combined to create a "drawdown"/French drain effect.   (Tr. 485.)   According to these experts, the drawdown effect of ODOT's waterline construction dried out and cracked the clay-based secondary containment system, thereby increasing its permeability and allowing the fuel to quickly

---

[2] Delta Fuels initiated suit against a host of entities involved in the bridge and ramp project, with the crux of the claims centered on ramp construction activities which allegedly compromised the secondary containment system.   Claims asserted by Delta Fuels against the various involved contractors were either resolved privately or in the common pleas court.   One of these cases, Delta Fuels case against an engineering firm hired by ODOT named DLZ, ultimately resulted in a jury verdict of $1,260,000 for Delta Fuels after a 40 percent reduction for Delta Fuels' own negligence.

escape underground onto ODOT's land. Further, Delta Fuels presented evidence that, by cutting sand seams with the waterline trench and filling the trench with a granular base, ODOT created a preferential pathway for the fuel to migrate to the sewer system and approach the river.

{¶ 7} Regarding its response to the fuel spill, Delta Fuels presented evidence that its actions reflected its initial belief that the spill approximated 10,000 gallons or less, and difficulties in measuring the fuel in the tanks delayed discovering the ultimate quantity of fuel lost. Delta Fuels also contended that it believed the Toledo environmental services department had been contacted on the day of the spill who, by procedure, would have then alerted the Ohio Environmental Protection Agency ("Ohio EPA").

{¶ 8} Delta Fuels additionally claimed that ODOT breached implied warranties and two contracts with Delta Fuels: the 2002 Right of Entry Agreement and the 2004 eminent domain settlement agreement and judgment entry. In the 2002 Right of Entry Agreement, ODOT and Delta Fuels agreed that the state and its contractors could have access to property at issue in a pending eminent domain proceeding for the purpose of relocating a portion of the berm and a fuel pipeline, constructing a fence, and tying in a drainage facility in connection with the ramp project. Delta Fuels presented evidence that ODOT's relocation of the waterline in July 2002 went outside the scope of the right of entry granted and encroached on Delta Fuels' easement associated with the waterline.

{¶ 9} In the 2004 eminent domain settlement agreement, Delta Fuels agreed to transfer a portion of land to ODOT and release any and all claims for further compensation resulting from construction and improvement of I-280 and from the appropriation of the property, in exchange for monetary compensation and work performed, and to be performed, by ODOT. Work performed by ODOT included "Fire hydrants. ODOT has installed a water line and five fire hydrants between the ramp and Delta Fuels's property per Toledo fire department requirements. ODOT will provide engineering documentation of this construction." (June 25, 2004 Settlement Letter, 2.) Delta Fuels presented evidence that ODOT failed to install all five fire hydrants as stated.

{¶ 10} The theory of ODOT's counterclaim in negligence focused on Delta Fuels' non-delegable duty to maintain its secondary containment system as legally required and Delta Fuels' delayed and inadequate remediation response, particularly within the critical

first few days following the spill. To these points, ODOT presented evidence that Delta Fuels failed in preventing such a migration by not maintaining legally compliant and adequate emergency response and spill remediation plans, not training its employees, not adequately testing the containment area, not equipping its facility with overflow alarms and safeguards, and not maintaining the berm. ODOT additionally presented evidence that Delta Fuels failed in responding to the fuel spill by not estimating the quantity of lost fuel based on the duration of the spill, not reporting the spill to the EPA as required, and not otherwise conducting the remediation appropriately and with a sense of urgency. For example, ODOT showed that its own contractor contacted the Ohio EPA on Tuesday, November 29, 2005, and that, on arrival, the Ohio EPA observed only one vacuum truck onsite and no exploratory digging outside of Delta Fuels' property to test for migration. ODOT also showed that several days later the Ohio EPA notified Delta Fuels to hire another environmental remediation firm to address the fuel release and that the following April, the federal EPA assumed responsibility for the clean up of the fuel spill, estimating that 80,000 gallons of gasoline remained.

{¶ 11} Further, ODOT presented evidence that construction of the waterline did not impact migration of the fuel outside of the secondary containment system. ODOT's experts testified that the new waterline location sat only a few feet from the old waterline, and both ODOT and the city of Toledo approved the location and construction of the new waterline. Although fuel was found in the new waterline and sewer, ODOT presented evidence that the fuel spill also migrated below both the waterline and the sewer, tending to disprove Delta Fuels' "drawdown" theory. ODOT's experts testified that the fuel escaped Delta Fuels' property by absorbing into the topsoil and moving laterally through sand seams naturally occurring throughout the secondary containment area and would have escaped even if the new waterline had not been constructed. Furthermore, Delta Fuels' experts admitted, on cross-examination, that they could not say that the fuel would not have migrated onto ODOT's property without the new waterline construction but, instead, emphasized that ODOT's work accelerated the speed that the fuel exited the secondary containment area and migrated toward the river.

{¶ 12} After closing arguments, the jury exited and, on Delta Fuels' claims, the trial court judge rendered a verdict in favor of ODOT. The jury deliberated on ODOT's

counterclaim and, on their return, rendered a verdict in favor of Delta Fuels. The trial court issued its written decision on December 12, 2014. At the outset of the decision, the trial court stated that it agreed with ODOT's argument that Delta Fuels is estopped from re-litigating the damages issue based on the interrogatories and jury verdict in Delta Fuels' negligence case against ODOT's engineering firm in a connected action. However, it rendered that issue moot on finding no negligence on the part of ODOT. Specifically, on Delta Fuels' negligence claim, the trial court found that:

> (1) Delta Fuels failed to prove by a preponderance of the evidence that ODOT was negligent in the design or construction of the Project; (2) one hundred percent of the damages suffered was caused by Delta Fuels' negligence in failing to contain the fuel on its own property; (3) ODOT had no duty to Delta Fuels to construct the Project so as to not damage the secondary containment system; (4) any negligence in the design or construction of the Project was not the proximate cause of the spill that left Delta Fuels' property because the spill would have left the property regardless of the construction; (5) Delta Fuels failed to prove damages to a reasonable degree of certainty and the Court would have to speculate as to the amount of Delta Fuels' damages; (6) Delta Fuels is precluded from recovering any damages from ODOT for the actions of ODOT's contractors and subcontractors because those damages were already recovered in the connected action.

(Dec. 12, 2014 Decision, 4.)

{¶ 13} Regarding Delta Fuels' claims of breach of contract and breach of implied warranties, the trial court further found that, although ODOT may have breached the contract regarding installation of fire hydrants, the breach was not a proximate cause of damages related to the spill, and Delta Fuels did not present any other evidence of damages related to the claim. The trial court additionally found that, as to any contract or warranty claim, there had been an accord and satisfaction through the eminent domain proceeding, and Delta Fuels already received compensation for and agreed to release ODOT from any claims related to the contract for construction and improvement to Delta Fuels' land.

{¶ 14} In its decision, the trial court also memorialized the jury's verdict for Delta Fuels on ODOT's counterclaim by answering "no" to interrogatory one: "Was Delta Fuels negligent in failing to contain their spill on their property?" (Dec. 12, 2014 Decision, 4.)

{¶ 15} On December 24, 2014, ODOT filed a motion for judgment notwithstanding the verdict, pursuant to Civ.R. 50(B), and motion for new trial, pursuant to Civ.R. 59, based on an apparent conflict between the trial court's determination in the course of evaluating Delta Fuels' claim that Delta Fuels was the party negligent in failing to contain the fuel on its own property and the jury's answer to interrogatory one. The trial court denied ODOT's motion, stating:

> It appears to the Court that the jurors' answer to the first interrogatory was that Delta Fuels was not responsible because its negligence was not a *proximate cause* of the damages sustained by ODOT, which considers both interrogatory one and two together. While the jurors should have answered "yes" to the first interrogatory, it is reasonable to interpret the "no" to the first interrogatory as "no" to interrogatory one and two combined. Accordingly, the Court finds that after construing the evidence most strongly in favor of the non-moving party, the jury's interrogatory answer and verdict are not so inconsistent with the Court's determination as to require the Court to enter judgment in ODOT's favor or grant a new trial.

(Emphasis sic.) (Mar. 6, 2015 Judgment Entry, 5.)

{¶ 16} Both Delta Fuels and ODOT submitted timely notices of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Delta Fuels raises the following assignments of error for our review:

> [1.] THE TRIAL COURT ERRED IN DENYING APPELLANT, DELTA FUELS, A JURY TRIAL.
>
> [2.] THE TRIAL COURT ERRED BY HOLDING THAT A 2004 JUDGMENT ON SETTLEMENT WAS IN ACCORD AND SATISFACTION OF APPELLANT'S, DELTA FUELS DAMAGES FOR ITS BREACH OF CONTRACT CLAIM.
>
> [3.] THE TRIAL COURT ERRED BY HOLDING THAT APPELLEE, ODOT, AS AN ADJOINING PROPERTY OWNER, DID NOT HAVE A DUTY OF CARE TO APPELLANT, DELTA FUELS.

{¶ 18} ODOT raises the following assignments of error for our review:

[1.] The Trial Court erred in overruling ODOT's Motion for Judgment Notwithstanding the Verdict despite the jury not finding that Delta Fuels was negligent in failing to contain their 100,000 gallon gasoline spill.

[2.] The Trial Court erred in overruling ODOT's Motion for a New Trial despite the jury not finding that Delta Fuels was negligent in failing to contain their 100,000 gallon gasoline spill.

## III.  DISCUSSION

### A.  Delta Fuels' First Assignment of Error

{¶ 19} In its first assignment of error, Delta Fuels contends that the trial court erred in denying it a jury trial on its claims against ODOT.  Delta Fuels does not ask us to review the legitimacy of the jury trial on ODOT's claim, which produced a ruling in Delta Fuels' favor.  ODOT asserts that Delta Fuels is not entitled to a trial by jury in the Court of Claims under R.C. 2743.11 and, regardless, waived a jury trial under the Civ.R 38 timeliness requirement.

{¶ 20} Whether a civil claimant is entitled to a jury trial in the Court of Claims against the state is a question of law and, as such, is reviewed de novo on appeal.  R.C. 2743.11; *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 17.  In the Court of Claims, a judge's decision to try a claim against a nonstate party before a jury is reviewed for an abuse of discretion.  *Nevins v. Ohio Dept. of Transp.*, 132 Ohio App.3d 6, 16 (10th Dist.1998).

{¶ 21} R.C. 2743.11 states in pertinent part:

No claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury. Parties retain their right to trial by jury in the court of claims of any civil actions not against the state.

{¶ 22} Delta Fuels contends that the trial court erred in denying it a jury trial because ODOT was essentially not a state party in this instance because it acted as a business entity in the construction project and decided to assert a counterclaim and request a jury trial.  In support of this contention, Delta Fuels cites a case where the Ohio

Department of Development brought suit against a private party in the court of common pleas, rather than in the Court of Claims.

{¶ 23} These arguments are unavailing. A civil action against ODOT is a civil action against "the state." R.C. 2743.01(A). Delta Fuels accepted this premise in opposing ODOT's motion to dismiss its third-party complaint in the Court of Claims, asserting that "[a]ny right to a jury trial possessed by the Third-Party Defendants can be preserved in accordance with [R.C. 2743.11]" as the action with Delta Fuels was "not against the state." (Delta Fuels' Opposition to ODOT's Motion to Dismiss Third-Party Complaint, 6.) The fact that ODOT engages in construction projects does not remove its status as a state entity. *See id.* Neither does the fact that ODOT pursued a counterclaim, which it is entitled by statute to do. R.C. 2743.02(E) ("The state may file a third-party complaint or counterclaim in any civil action, except a civil action for ten thousand dollars or less, that is filed in the court of claims."); *Id.* at 14-15. As Delta Fuels is a claimant pursuing a civil action against the state, R.C. 2743.11 clearly prohibits a jury trial on Delta Fuels' claim. *Id.* at 16, 18.

{¶ 24} The prohibition against jury trials in the Court of Claims under R.C. 2743.11, for claims against the state, is unaltered by Delta Fuels' interrelated arguments regarding alleged prejudice that resulted from the trial court's denial of a jury trial, the "likely" legislative intent of R.C. 2743.11, and the "inherent" inequality of being denied a jury trial. (Delta Fuels' Brief, 22.) Delta Fuels asserts that the trial court's denial of its request for a jury trial was prejudicial because it was "not able to present its claims against ODOT to the jury, which were inherently relevant to ODOT's claims against Delta Fuels." (Delta Fuels' Reply, 2.) This argument seems to amount to Delta Fuels' preference for a jury trial, now that the verdicts are in. However, Delta Fuels never objected to the split nature of the proceeding prior to learning its result. Delta Fuels offers, and we find, no relevancy exception to R.C. 2743.11's prohibition against jury trials against the state. To the contrary, separate trials on claims relevant to each other may be tried separately. *See*, *e.g.*, *id.* at 16, 18; *Cincinnati Ins. Co. v. Keneco Distribs. Inc.*, 10th Dist. No. 97API04–459 (Nov. 13, 1997); *Moritz v. Troop*, 44 Ohio St.2d 90 (1975); *White v. Ohio Dept. of Transp.*, 56 Ohio St.3d 39, 41 (1990). Lastly, Delta Fuels fails to explain how any relevancy

between the claim and counterclaim would have ultimately affected the outcome of Delta Fuels' case.

{¶ 25} Delta Fuels additionally asserts that the legislative intent behind R.C. 2743.11 stated in *Wirth v. Ohio Dept. of Transp.*, 10th Dist. No. 78AP-838 (June 26, 1979), is to "minimize those instances in which the Court of Claims is required to conduct jury trials." *Id.* This argument tends to hurt, rather than help, Delta Fuels' position in this assignment of error lamenting the lack of a jury trial. Moreover, *Wirth* went on to recognize that R.C. 2743.11 "may result either in two trials in the Court of Claims upon the same claim or in a single trial, with the court itself determining the action as against the State and the jury determining the action as against any other defendant." *Id.* Thus, we find Delta Fuels' argument regarding legislative intent unpersuasive considering its position seeking a jury trial.

{¶ 26} Regarding any apparent inequality of being denied a jury trial on its claim against the state, although generally "both parties in a lawsuit are entitled to equal treatment and consideration," the legislature crafted specific statutes to accommodate the unique position of the Court of Claims. *Stauffer v. Isaly Dairy Co.*, 4 Ohio App.2d 15, 29 (7th Dist.1965); *Nevins* at 16, 18. As discussed, R.C. 2743.11 is clear that "*no* claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury." (Emphasis added.) *Id.* This is true even if execution of the law results in separate trials, different triers of fact, and inconsistent outcomes on related claims and issues. *See*, *e.g.*, *id.*; *Cincinnati Ins. Co.*; *Moritz*; *White* at 41. Delta Fuels points to, and we can locate, no exceptions in the law to support its argument for a jury trial due to alleged inequality or unfairness here.

{¶ 27} To the extent that Delta Fuels may incorporate, under plain error review, a general constitutional challenge to the unavailability of a jury trial against the state in the Court of Claims, we decline to exercise our discretion to review this issue. Delta Fuels does not define the nature of the constitutional challenge, articulate the rights and interests involved, or demonstrate prejudice, as discussed above. App.R. 16(A)(7); *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus; *Skydive Columbus Ohio, L.L.C. v. Litter*, 10th Dist. No. 09AP-563, 2010-Ohio-3325, ¶ 13. As such, Delta Fuels does not meet its burden on appeal, and we decline to address this constitutional challenge for the

first time in this instance.  *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11.  *See also Siegel v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 14AP-279, 2015-Ohio-441, ¶ 19-20 (declining to exercise its discretion to consider a constitutional due process challenge to R.C. 2743.11 where appellants waived objection to unavailability of a jury by failing to comply with timeliness requirements of Civ.R. 38(B) and rights and interests involved did not warrant consideration under plain error).

{¶ 28}  Accordingly, for all the above stated reasons, Delta Fuels' first assignment of error is overruled.

### B.  Delta Fuels' Second Assignment of Error

{¶ 29}  In its second assignment of error, Delta Fuels contends that the trial court erred in resolving its breach of contract claim by holding that the 2004 judgment on settlement was in accord and satisfaction of Delta Fuels' damages.  Specifically, Delta Fuels contends the trial court erred in (1) failing to address relocation of the waterline as a breach of the 2002 Right of Entry Agreement, (2) failing to determine that ODOT had not met its burden in proving the mutual assent element of accord and satisfaction, and (3) failing to compensate Delta Fuels for ODOT's breach of the 2004 settlement agreement by not installing all five fire hydrants as promised.

{¶ 30} Contract interpretation is a question of law, reviewed de novo on appeal, while the parties' performance of undisputed terms is generally a question of fact reviewed for an abuse of discretion.  *O'Brien v. Ohio State Univ.*, 10th Dist. No. 06AP-946, 2007-Ohio-4833, ¶ 9.  "To prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damages or loss to the plaintiff."  *Andrew v. Power Marketing. Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 34.  "The nonbreaching party must establish the fact of damage and then sustain its burden of proof as to the amount of damage by proof on any reasonable basis."  *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983).  Thus, "[d]amages are not awarded for a mere breach alone," but, rather, the plaintiff must show damages as a result of the breach.  *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 435 (3d Dist.1998); *Eckel v. Bowling Green State Univ.*, 10th Dist. No. 11AP-781, 2012-Ohio-3164, ¶ 85

("[D]amages resulting from breach of contract must flow naturally and proximately from the breach.").

{¶ 31} Regarding Delta Fuels' first argument, the trial court did address the waterline claim as a part of its determination that "any" breach of contract claim had already been compensated for and released through settlement of the eminent domain action. (Dec. 12, 2014 Decision, 5.) Therefore, the trial court's decision is not incomplete.

{¶ 32} Delta Fuels goes on to argue that since it did not discover the waterline construction, which it alleges is a breach of the 2002 agreement, until after the 2005 spill, any resolution of claims in the 2004 eminent domain settlement did not apply or, stated differently, ODOT did not meet its burden in proving mutual assent. However, ODOT's construction of the waterline and hydrants was expressly a part of the eminent domain settlement, and the settlement letter clearly states that the work on the waterline had already been completed. Pursuant to the same settlement agreement, Delta Fuels agreed to transfer a portion of Delta Fuels' land to ODOT and release any and all claims for further compensation resulting from construction and improvement of I-280 and from the appropriation of the property, in exchange for monetary compensation and the work discussed elsewhere in the settlement. Considering Delta Fuels agreed to the settlement after the work on the waterline and hydrants was already completed, a fact clearly expressed in the agreement, we find Delta Fuels' argument regarding a lack of mutual assent or lack of knowledge of the waterline construction in this instance unpersuasive. *See also McBroom v. Safford*, 10th Dist. No. 11AP-885, 2012-Ohio-1919, ¶ 12 ("[A]bsent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor.").

{¶ 33} Further, "[w]hen avoidance of the error would not change the outcome of the proceedings, the error is not prejudicial." *Morgan v. Mikhail*, 10th Dist. No. 08AP-87, 2008-Ohio-4598, ¶ 53. Delta Fuels' argument under this assignment of error is based on the theory that ODOT's waterline relocation caused the spill migration which resulted in damages. The trial court held otherwise, and Delta Fuels did not appeal the trial court's causation determination. Delta Fuels also did not appeal the trial court's finding that "Delta Fuels failed to prove damages to a reasonable degree of certainty." (Dec. 12, 2014

Decision, 4.)  In other words, even if the trial court erred in determining an accord and satisfaction or release occurred through the settlement, Delta Fuels suffered no prejudice warranting reversal on appeal.  App.R. 12; *Morgan*.

{¶ 34} Delta Fuels' third argument pertaining to ODOT's breach of the 2004 settlement agreement by failing to install all five fire hydrants similarly fails.  While Delta Fuels argues it is entitled to damages arising out of this breach, at trial it admitted that it "really [did not] know * * * the cost of [the] fire hydrants" and otherwise provided no evidence regarding damages.  (Tr. 1486.)  Like the trial court, we find Delta Fuels did not sustain its burden of proof as to the amount of damage flowing from the alleged breach.  As such, Delta Fuels is not entitled to compensation.  *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 226 (11th Dist.1996).  Considering the foregoing, we cannot say the trial court's failure to definitively rule on the fire hydrant installation issue is prejudicial, warranting reversal.  App.R. 12; *Morgan*.

{¶ 35} Accordingly, Delta Fuels' second assignment of error is overruled.

## C.  Delta Fuels' Third Assignment of Error

{¶ 36} In its third assignment of error, Delta Fuels contends that the trial court erred by holding that ODOT, as an adjoining property owner, did not have a duty "to consider the potential effects that those activities would have had on Delta Fuels' land." (Dec. 12, 2014 Decision, 5.)  Delta Fuels asserts that, because there was a duty, the trial court should have analyzed the remaining elements of negligence.

{¶ 37} To prevail in a negligence action, a plaintiff must show the existence of a duty, a breach of that duty, and injury that is the proximate result of that breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).  Thus, "[t]he existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adelman v. Timman*, 117 Ohio App.3d 544, 549 (8th Dist.1996).

{¶ 38} ODOT's individual engineers owe a duty to "[p]rotect the safety, health and welfare of the public in the performance of professional duties."  Code of Ethics for Engineers and Surveyors, "Responsibility to the public," Ohio Adm.Code 4733-35-03(A). In undertaking and constructing a highway project, ODOT owes a duty of care to adhere to its current written standards.  *Lunar v. Dept. of Transp.*, 61 Ohio App.3d 143, 146-47 (10th Dist.1989), citing *Lopez v. Ohio Dept. of Transp.*, 37 Ohio App.3d 69 (10th

Dist.1987). Where no written standards apply to the construction at hand, "the liability of ODOT must be determined in accordance with the same rules of law applicable to suits between private parties." *Id.*, citing R.C. 2743.02. Under general rules of negligence applicable to private parties, "[g]enerally, one may use his land as he sees fit, providing that his use does not invade the rights of others." *Heckert v. Patrick*, 15 Ohio St.3d 402, 403 (1984). However, "a possessor of land is subject to liability to others outside the land for physical harm caused by a structure or artificial construction on the land which the possessor realizes or should realize will involve an unreasonable risk of harm." *Id.* at 404, citing 2 Restatement of the Law 2d, Torts, Section 364 (1965).

{¶ 39} Here, it is unclear from the record whether any written standards required ODOT to consider the effect of the waterline on Delta Fuels' property. However, ODOT took on the responsibility of moving and reconstructing Delta Fuels' private waterline which, at the time of construction, was located in Delta Fuels' easement. As such, considering ODOT planned to excavate a trench very near a containment system legally required to prevent the migration of potential massive fuel spills, we agree with Delta Fuels that the trial court erred in stating that ODOT had no duty to at least consider the potential effects of its activities on Delta Fuels' secondary containment system.

{¶ 40} Nevertheless, Delta Fuels is incorrect in stating that the trial court did not then consider additional elements of its negligence claim. The trial court found that Delta Fuels failed to prove ODOT was negligent in the design or construction of the project, that any alleged breach proximately caused its damages, and, regardless, failed to prove damages with a reasonable degree of certainty. Delta Fuels does not appeal these findings. Therefore, as previously discussed, we cannot say the trial court's finding of no duty in this instance is prejudicial, warranting reversal. App.R. 12; *Morgan*.

{¶ 41} Accordingly, Delta Fuels' third assignment of error is overruled.

**D. ODOT's First Assignment of Error**

{¶ 42} In its first assignment of error, ODOT contends that the trial court erred in denying its Civ.R. 50(B) motion for judgment notwithstanding the verdict. We disagree.

{¶ 43} "A motion for judgment notwithstanding the verdict is used to determine only one issue: whether the evidence is totally insufficient to support the verdict." *Harper v. Lefkowitz*, 10th Dist. No. 09AP-1090, 2010-Ohio-6527, ¶ 8. "Neither the weight of the

evidence nor the credibility of the witnesses is proper consideration for the trial court." *Smith v. Superior Prod., L.L.C.*, 10th Dist. No. 13AP-690, 2014-Ohio-1961, ¶ 11, citing *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976). The evidence "must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986), citing *Posin*. A ruling on a motion for judgment notwithstanding the verdict is a question of law, reviewed de novo on appeal. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 25; *Smith*.

{¶ 44} As a preliminary issue, the trial court held, in response to ODOT's argument in its motion, that the jury's interrogatory and verdict were not so inconsistent with the court's determination as to require a new trial. However, in doing so, it indicated that it believed the jurors' answer to the first interrogatory regarding Delta Fuels' negligence should have been "yes," and its answer to the second interrogatory regarding proximate cause of ODOT's damages should have been "no" but that it was "reasonable to interpret the 'no' to the first interrogatory as 'no' to interrogatory one and two combined." (Mar. 6, 2015 Judgment Entry, 5.) ODOT alleges this basis was in error and, finding no support for a trial court's post-verdict interpretation of an interrogatory against the plain answer of the jury, we agree. However, we do not find the error prejudicial.

{¶ 45} Here, the jury was tasked with evaluating whether ODOT had proved, by a preponderance of the evidence, that Delta Fuels was negligent. The jury returned a verdict in favor of Delta Fuels, specifically indicating in an interrogatory that Delta Fuels was not negligent in failing to contain their spill on their property. ODOT argues that the evidence presented shows otherwise and refers to Delta Fuels' admitted negligence in the initial spill, its failure to properly maintain or assess the secondary containment system in dereliction of its non-delegable duty to do so, and its after-spill inadequacies in failing to report the spill or devote appropriate measure to clean up.

{¶ 46} Delta Fuels did present evidence that put its own negligence in dispute. Several experts testified that the law did not require the secondary containment system to be impermeable in an absolute sense but to be impermeable enough to allow for clean up, and Delta Fuels experts testified that ODOT's construction activities weakened its

secondary containment system and accelerated the spill migration. Delta Fuels' owner and employees testified that prior to ODOT's construction, the containment system previously held water, which would also mean it would hold fuel. Delta Fuels' leadership and a responding fireman testified that little fuel was visible on the surface of the containment system and was not apparent outside of the containment system for days, and an ODOT expert confirmed Delta Fuels' assertions that measuring a fuel spill accurately can be a difficult task.

{¶ 47} That the trial court reached a different conclusion than the jury regarding Delta Fuels' negligence in evaluating Delta Fuels' claim is inapposite, as the triers of fact were charged with considering the same evidence through the lens of different burdens of proof on each of the elements of negligence. Therefore, its conclusion is not "completely opposite" to the jury verdict as ODOT suggests. (ODOT's Brief, 7.) Moreover, in a technical case such as this, the fact of different conclusions alone does not render one of those conclusions unreasonable. By demanding the trial by jury, ODOT opened itself for this possibility, as "[t]his court has held that given the inherent nature of the Court of Claims, the possibility that independent or inconsistent verdicts may be rendered in the same case is quite real." *Nevins* at 16, citing *Cincinnati Ins. Co.* and *Moritz.*

{¶ 48} Overall, our review of the record shows that this was a close case with a substantial amount of scientific and technical information involved. Construing the evidence most strongly in favor of Delta Fuels and mindful that ODOT bore the burden to prove each element of negligence, we find substantial record evidence supports Delta Fuels' case for a defense verdict, on which reasonable minds could reach different conclusions. *Posin.* As such, the motion for judgment notwithstanding the verdict should have been denied.

{¶ 49} Accordingly, ODOT's first assignment of error is overruled.

**E. ODOT's Second Assignment of Error**

{¶ 50} In its second assignment of error, ODOT contends that the trial court erred in denying its Civ.R. 59 motion for new trial as Delta Fuels' defense verdict against the manifest weight of evidence. We disagree.

{¶ 51} Civ.R. 59(A)(6) addresses manifest weight grounds for a new trial, stating "[a] new trial may be granted to all or any of the parties and on all or part of the issues

upon any of the following grounds: * * * (6) The judgment is not sustained by the weight of the evidence." As opposed to a Civ.R. 60(B) motion, "[w]hen presented with a motion premised on Civ.R. 59(A)(6), a trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the manifest weight of the evidence supports the judgment." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 61. *See also Eastley* at ¶ 17-23 (applying *State v. Thompkins*, 78 Ohio St.3d 380 (1997), standard of review for manifest weight of evidence to civil cases). "An appellate court reviews the grant or denial of a motion for new trial under an abuse of discretion standard." *Smith* at ¶ 58. The reviewing court gives deference to the trial court's grant of a new trial, which " 'stems in part from the recognition that the judge is better situated than a reviewing court to pass on questions of witness credibility' and the ' "surrounding circumstances and atmosphere of the trial." ' " *Id.*, quoting *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 448 (1996), quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 94 (1970). An abuse of discretion occurs where a trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 52} Here, ODOT lists an array of evidence in support of Delta Fuels' negligence, such as its admitted causation of the initial spill, allowing the spill to last at least 50 minutes, not having alarms or overflow protections, not having current spill and response plans and having poor training, failure to assess and maintain the secondary containment system, delays in reporting the spill and inaccurately quantifying the spill, and inadequate remediation and clean-up activities. However, as discussed in ODOT's first assignment of error, Delta Fuels presented evidence that it was ODOT's negligence that actually caused the migration. For example, at least one employee supported Delta Fuels' owner's contention that prior to ODOT's construction, the containment system held water, which would also mean it would hold fuel. Several experts testified that the law did not require the absolute impermeability, but rather impermeability to the extent to allow for recovery of the fuel. Delta Fuels' experts testified that ODOT's construction activities weakened its secondary containment system and accelerated the spill migration. Considering the above, we find the defense verdict not to be against the manifest weight of the evidence.

{¶ 53} To the extent that ODOT additionally alleges error in the trial court's interpretation of the jury's answer to the interrogatories, as discussed previously, we agree

this determination was in error. However, on appeal, ODOT does not specify or argue and support a particular ground under Civ.R. 59 to warrant granting a new trial for this error. As such, ODOT has not met its burden on appeal. App.R. 16(A)(7). Furthermore, also discussed previously, regardless of the trial court's interpretation, the findings of the judge and jury were founded on different burdens and therefore not "completely opposite," and ODOT accepted the possibility of inconsistency in verdicts when demanding a jury trial in the Court of Claims. (ODOT's Brief, 7.)

{¶ 54} Accordingly, ODOT's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 55} Having overruled Delta Fuels' three assignments of error, and overruled ODOT's two assignments of error, we hereby affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

LUPER SCHUSTER and HORTON, JJ., concur.

_____