[Cite as *Gissentaner v. Buckeye Sauce Corp.*, 2022-Ohio-468.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RONEE GISSENTANER, ET AL.,               :

      Plaintiffs-Appellants,               :

                        No. 110678

v.               :

BUCKEYE SAUCE
CORPORATION, ET AL.,               :

      Defendants-Appellees.               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 17, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-899474

---

### *Appearances:*

Leslie Murray Law and John T. Murray, *for appellants*.

Eloff and Willson, LLP, Kathryn Gonser Eloff, and James Matthew Willson, *for appellee* the Estate of Essie Williams and Wanda Robinson.

Seeley, Savidge, Ebert & Gourash Co., LPA, Daniel F. Gourash, and Jeffrey S. Moeller, *for appellee* Buckeye Sauce Corporation.

CORNELIUS J. O'SULLIVAN, JR., J.:

**{¶ 1}** In this interlocutory appeal, plaintiffs-appellants, Ronee Gissentaner, et al. (at times collectively referred to as "plaintiffs" or "appellants"), appeal the trial court's ruling that the proceeds of a policy of life insurance interpled to the court should be paid to the estate of deceased shareholder Essie Williams. We affirm.

## I.    Procedural History and Facts

**{¶ 2}** This appeal involves a family dispute between two branches of the Williams family and the ownership and control of Hot Sauce Williams, which were well-known Cleveland BBQ restaurants. Hot Sauce Williams was founded by the Williams patriarch and passed down to the five brothers of the Williams family. Defendant-appellee Buckeye Sauce Corporation ("Buckeye Sauce") is an Ohio corporation that operated the restaurants and has been closely held by members of the Williams family since its incorporation in 1979.

**{¶ 3}** In 1987, the five shareholders of Buckeye Sauce entered into a "Memorandum of Buy-Sell Agreement" ("Buy-Sell Agreement") funded by $250,000 "key man" life insurance policies on each shareholder. The agreement encumbered the sale of all shares of Buckeye Sauce during the lives of each shareholder and required the corporation to purchase and "the estate of the deceased shareholder (or any other recipient of the stock of the deceased (s)hareholder)" to sell to Buckeye Sauce all the shares owned by the shareholder at the time of his or her death.

{¶ 4} The two family branches in dispute in this case are the descendants of brother James Williams ("James"), and the descendants of brother Willie Williams ("Willie") and his wife, Essie Williams ("Essie").

{¶ 5} From 1987 until November 2014, Buckeye Sauce maintained a life insurance policy with National Life Insurance in force to fund its obligation to redeem James's shares upon his death. Buckeye Sauce made the premium payments over the life of the policy with exception of two payments, which James himself remitted. Essie's key man life insurance policy was also with National Life Insurance.

{¶ 6} At the time of James's death in November 2014, he had 100 shares of Buckeye Sauce stock. The other living shareholders, Essie, and brother Herbert Williams ("Herbert") also each had 100 shares.[1]

{¶ 7} Pursuant to the Buy-Sell Agreement, upon the death of a shareholder of Buckeye Sauce, that shareholder's shares were to be cashed out by Buckeye Sauce pursuant to the terms of the agreement, leaving the surviving shareholders to operate the company. In exchange for payment as provided, the shareholder's estate (or his or her heirs) were required by the agreement to surrender their stock certificates, and their shares would be retired. Shortly before his death, James signed a request for policy-ownership form and a beneficiary-change form

---

[1] At some point, Herbert took ownership of his insurance under the agreement, cashed it out, and remitted his shares to Buckeye Sauce. His estate is not a party to this appeal.

designating his granddaughter Ronee Gissentaner ("Ronee"), daughter Sandra Gissentaner, and son Michael Williams as beneficiaries.[2]

{¶ 8} James's estate was filed in the Cuyahoga County Probate Court in December 2014.  *See Estate of James Williams*, Cuyahoga P.C. No. 2014-EST-203117.  In December 2017, the probate court approved the in-kind distribution of James's 100 shares of Buckeye Sauce to his heirs.  In March 2018, the executor of the James's estate transferred 10.202 and 54.09 shares of Buckeye Sauce stock to Ronee and James's minor great-granddaughter, C.G., respectively.

{¶ 9} A dispute arose between Ronee and Essie regarding the ownership and management of the Hot Sauce Williams restaurants.  Ronee and the other plaintiffs filed this action as a minority shareholder action, alleging a breach of fiduciary duty, breach of the duties of care and loyalty, self-dealing, conversion, and unjust enrichment against various defendants, including Essie, both individually and as an agent for Buckeye Sauce.  Of note, plaintiffs alleged in their complaint that they were bringing a "derivative action on behalf of corporate defendants."  Defendants counterclaimed against Ronee for tortious interference of contract.

{¶ 10} Herbert and Essie died days apart in January 2019.  Prior to her death, Essie changed her life insurance policy to name her daughter Wanda Robinson ("Wanda") and Willie's children as beneficiaries.

---

[2] This beneficiary change form was the subject of an interpleader action following James's death.  *Natl Life Ins. Co. v. Michael Williams*, Cuyahoga C.P. No. CV-15-842728.

{¶ 11} In May 2019, certain members of James's branch of the family held a shareholder meeting where Ronee was purportedly elected president and chair of board of directors of Buckeye Sauce. According to National Life Insurance, Ronee represented herself to the insurer as Buckeye Sauce's president and chief operating officer and made a claim for the policy proceeds of Essie's estate. National Life Insurance issued a check in the amount of $254,099.32 to Buckeye Sauce. National Life Insurance quickly learned that Ronee was not the president of Buckeye Sauce and that "another board of directors of the company" had met and elected Wanda president and chief executive officer of Buckeye Sauce. National Life Insurance voided the check it had issued to Ronee and filed a complaint for interpleader in the trial court, stating that it had received multiple competing claims for the policy proceeds from Essie's estate by multiple persons and multiple board of directors of Buckeye Sauce.

{¶ 12} It was at this point that Wanda, both individually and in her role as executor of Essie's estate, and Willie's children — Cameron Robinson, Kennedy Robinson, and Warren Cooper — were added to the proceedings. National Life Insurance moved to deposit the funds with the court, which the trial court granted, and dismissed the insurer from the case. The defendants filed a counterclaim, alleging breach of contract and tortious interference; they sought specific performance and a declaratory judgment that the plaintiffs were not shareholders of Buckeye Sauce.

{¶ 13} Plaintiffs, through motions for summary judgment, sought a declaration that they were indeed shareholders in Buckeye Sauce and should be allowed to proceed as management of the corporation pursuant to the May 2019 shareholder meeting (that was attended by members of only James's branch of the family). Buckeye Sauce argued that the plaintiffs were not shareholders because the shares they inherited from James were subject to corporate redemption pursuant to the Buy-Sell Agreement; therefore, plaintiffs lack standing to bring claims asserted in their complaint and the James's heirs, namely Ronee, had already received compensation for their shares via payment of the proceeds of James's life insurance policy.

{¶ 14} On July 22, 2020, the trial court issued an order and opinion declaring the plaintiffs minority shareholders of Buckeye Sauce by virtue of the shares they inherited from James's estate. The court declined to give plaintiffs a declaration to allow them to proceed as management of Buckeye Sauce, stating that the court lacked subject matter jurisdiction to do so. The court also denied plaintiffs' motion to appoint a receiver.

{¶ 15} Buckeye Sauce filed a notice of appeal to contest plaintiffs' minority shareholder status, which this court sua sponte dismissed as untimely filed pursuant to App.R. 4. *See Gissentaner v. Buckeye Sauce Corp.*, 8th District Cuyahoga No. 109984, motion No. 541479 (Sept. 30, 2020).

{¶ 16} In January 2021, a pretrial was held and the parties agreed to brief the issue of what individuals or entities were entitled to Essie's National Life Insurance

proceeds. After numerous briefs were filed, the trial court determined that the insurance proceeds were to be paid to Essie's estate through the corporation as dictated by the Buy-Sell Agreement. In so doing, the court found

> [n]o evidentiary support for plaintiffs' claim of a breach of the Buy-Sell Agreement by Essie Williams prior to her death that would vitiate the agreement. Under the terms of the Buy-Sell Agreement, the corporation's failure to maintain the life insurance policies does not constitute a breach. Moreover, even though the court has previously found that plaintiffs are minority shareholders of Buckeye Sauce (*See* Opinion dated 7/23/2020), this does not confer upon them standing to assert a breach of the agreement as it relates to the corporation's agreement with Essie Williams.

Journal Entry No. 117596185 (June 23, 2021).

{¶ 17} The plaintiffs filed this interlocutory appeal, raising the following assignments of error:

> I. The trial court erred as a matter of law when it ruled Plaintiff-Appellants did not have standing to assert Essie Williams breached the Buy/Sell Agreement.
>
> II. The Trial Court erred as a matter of law when it ordered Buckeye Sauce Corporation to pay the National Life Insurance proceeds to the representative of the Estate of Essie Williams when conditions precedent have not been met.
>
> III. The trial court erred in finding the Buy Sell Agreement was enforceable and not terminated.
>
> IV. The trial court erred when it denied a renewed request to appoint a receiver and failed to address the plea for the appointment of a receiver in the entry appealed from.

## II. Law and Analysis

{¶ 18} On appeal, the appellants assert that the trial court erred when it determined that the proceeds of the National Life Insurance Policy should be paid

to Essie's estate pursuant to the terms of the Buy-Sell Agreement. The trial court held, however, that appellants did not have standing to assert that Essie breached the Buy-Sell Agreement prior to her death. In the first assigned error, the appellants contend that the trial court erred in its finding that they did not have standing to assert a breach of the Buy-Sell Agreement as it relates to Essie.

## A. Standing

{¶ 19} In this case, the trial court found that there was no evidentiary support for appellants' claim that there was breach of the Buy-Sell Agreement, and moreover, appellants do not have standing.

{¶ 20} Standing is a threshold issue. "Standing is a threshold question for the court to decide in order for it to proceed to adjudicate the action." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). "To decide if an action has been brought by the real party in interest, 'courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief.'" *Wheeler v. Johnson*, 2d Dist. Montgomery No. 22178, 2008-Ohio-2599, ¶ 34, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 25, 485 N.E.2d 701 (1985).

{¶ 21} Shareholders may bring actions in one of two ways, either through an individual direct action or a Civ.R. 23.1 shareholder's derivative suit. "A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim." *Crosby v. Beam*, 47 Ohio St.3d 105, 107, 548 N.E.2d 217 (1989). A Civ.R. 23.1 suit "is an exception to the usual rule that a

corporation's board of directors manages or supervises the management of a corporation. A derivative action allows a shareholder to circumvent a board's refusal to bring a suit on a claim." *Id.* But "if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action." *Id.*, citing 2 O'Neal & Thompson, *O'Neal's Close Corporations*, Section 8.11, 119-121 (3d Ed.1987).

{¶ 22} At this juncture, it would be premature to determine whether the plaintiffs' suit in its entirety was properly brought as a direct action or a derivative suit (noting that plaintiffs stated in their complaint that they were bringing a derivative suit but now claim their suit was not brought pursuant to Civ.R. 23.1). We are only called upon to review the trial court's determination of standing as to the claim before us — whether appellants had standing as minority shareholders to contend that Essie breached the Buy-Sell Agreement with Buckeye Sauce.

{¶ 23} The trial court determined that the plaintiffs were minority shareholders in Buckeye Sauce because of the probate court's distribution of James's shares to the plaintiffs. The trial court noted that the probate court did not consider the provisions of the Buy-Sell Agreement, but that "Buckeye Sauce's failure to present its breach of contract claim against the Estate to the executor or administrator within the time prescribed by R.C. 2117.06(B)[3] operates as bar of its claim for any breach of the Buy-Sell Agreement." In other words, because Buckeye

---

[3] R.C. 2117.06(B) provides that claims, including those arising out of contract, must be presented within six months after the decedent's death.

Sauce did not file a breach-of-contract claim against the estate in probate court, it is barred from asserting that James improperly changed his beneficiaries without considering the Buy-Sell Agreement. It is under this theory that the trial court found that the plaintiffs were minority shareholders in Buckeye Sauce.

{¶ 24} Article IX of the Buy-Sell Agreement provides:

New Shareholders Automatically Parties

Any additional persons acquiring stock hereafter shall automatically become bound by the provisions hereof * * * and * * * such new shareholder shall receive the benefits of and be restricted by the provisions of this Agreement * * *.

{¶ 25} As minority shareholders, appellants allege a breach of the Buy-Sell Agreement by Essie, who was a majority shareholder in Buckeye Sauce.[4] We find that the trial court's determination that they are minority shareholders in conjunction with the provisions of the Buy-Sell Agreement confers standing upon appellants to bring their claim.

{¶ 26} Appellees contend that either appellants do not have standing or the trial court erred in finding that the appellants were minority shareholders. We have already determined that appellees have standing to bring this appeal. As to the trial court's determination that appellees are minority shareholders, the trial court issued its order finding appellees were minority shareholders on July 24, 2020. Appellees filed an untimely notice of appeal on September 28, 2020, and this court dismissed

---

[4] Their claim arose during the pendency of the instant action; when appellants filed their complaint, Essie had not yet changed the designation on her life insurance policy.

their appeal pursuant to App.R. 4.[5]  Appellees have waived their right to raise a legal challenge on any issues that they could have raised in that appeal.

{¶ 27} Considering the above, we find that the appellants, as minority shareholders, have standing to challenge the disposition of the proceeds of a deceased majority shareholder's life insurance policy as it was held by the corporation.

{¶ 28} Therefore, finding that the appellants have standing as minority shareholders to challenge the distribution of the insurance proceeds, the first assignment of error is sustained.

### B.  Conditions Precedent

{¶ 29} In the second assignment of error, the appellants contend that the trial court erred when it ordered Buckeye Sauce to pay the life insurance proceeds to Essie's estate when conditions precedent to payment had not been met.

{¶ 30} As an initial matter, contrary to appellants' contention, the trial court did not order Buckeye Sauce to pay the life insurance proceeds to Essie's estate.  The trial court's order stated that the proceeds of the life insurance policy, which were interpled with the court, are "to be paid directly to the legal representative of the estate of Essie Williams," not through or by Buckeye Sauce as an intermediary.

---

[5] App.R. 4 provides that "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry."  App.R. 4(A)(1).

{¶ 31} As mentioned, National Life Insurance sought to intervene in the case and interplead the funds. Notably, appellants supported the interpleader action in their answer to the National Life Insurance's complaint.

{¶ 32} Appellants now argue that the conditions precedent to paying the proceeds to the estate were not met. Appellants cite to Article VI(c) of the Buy-Sell Agreement to support their argument that conditions precedent were not met, specifically, that the shares must be retired prior to receipt of policy proceeds. "Article VI(c) Death of A Shareholder" provides, in pertinent part:

> Notwithstanding any provision of preceding paragraph (b) or this Article, no payment of insurance proceeds received by the Corporations shall be made to the Legal Representative, assigns, or any other person designated by a deceased Shareholder unless and until (1) all the stock owned by the decedent at the date of death is surrendered and properly endorsed to the Corporations, (2) authenticated documentation of the designation is provided the Corporations, and (3) a properly executed receipt and release, in form approved by the Corporations, is provided the Corporations.

{¶ 33} The trial court's order cited Article VI(B) of the Buy-Sell Agreement:

> The Corporations shall proceed immediately to collect the proceeds of any insurance policy on the deceased Shareholder's life. Upon the collection of such proceeds, the Corporations shall pay to the Legal Representative of the decedent's estate, or to such other authenticated designate of the decedent, the full amount of the insurance proceeds (referred to in Article VII of this agreement) as full payment of the purchase of all the shares of the deceased shareholder. * * *

{¶ 34} The trial court ordered the proceeds of the policy "to be paid directly to the legal representative of the estate of Essie Williams pursuant to the terms of the Buy-Sell Agreement for retirement of the shares held by her estate." Journal Entry No. 117596185 (June 23, 2021).

{¶ 35} We are not persuaded by appellants' assertion. For practical purposes, the estate will retire the shares concurrently with the receipt of the interpled money, and the estate representative will receive the proceeds as payment of the purchase of the shares. Nothing in Article VI(c) provides that the corporation must receive the retired shares at a certain time precedent to tendering the life insurance proceeds to comply with the agreement.

{¶ 36} Accordingly, the second assignment of error is overruled.

## C. Enforceability of Buy-Sell Agreement

{¶ 37} In the third assignment of error, appellants contend that the Buy-Sell Agreement is unenforceable because Essie breached the agreement when Buckeye Sauce failed to make every payment on James's policy.

{¶ 38} Contract interpretation is a question of law that is reviewed de novo on appeal. *Broadway Concrete Invests., L.L.C. v. Masonry Contracting Corp.*, 8th Dist. Cuyahoga No. 110420, 2022-Ohio-19, ¶ 44, citing *Delta Fuels, Inc. v. Ohio Dept. of Transp.*, 2015-Ohio-5545, 57 N.E. 3d 220 (10th Dist.). "To prove a breach of contract, a plaintiff must prove the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damages or loss to the plaintiff." *Broadway Concrete* at *id.*, citing *Delta Fuels*.

{¶ 39} The record shows that Buckeye Sauce made the payments on James's insurance policy, except for one payment in 2013 and one payment in 2014, which James made himself after he received notice that the payments had not been made by the corporation. Appellants claim that James's action of making the payments

himself constituted a breach by Essie of the Buy-Sell Agreement between Buckeye Sauce and James.

{¶ 40} Article VII(b) of the Buy-Sell Agreement provides:

(b) The Corporation shall be the sole beneficiary and the sole owner of all policies issued subject to this Agreement. Should this Agreement be terminated for any reason or should the Corporations for any reason decide to discontinue maintaining insurance on the lives of the Shareholders, they shall offer to convey ownership of each policy to the insurance Shareholder covered thereby, without cost to the Shareholder.

{¶ 41} The trial court found that "under the terms of the agreement, the corporation's failure to maintain the life insurance policies does not constitute a breach." Journal Entry No. 117596185 (Jun. 23, 2010). We agree that the Buy-Sell Agreement provided that Buckeye Sauce had the right to decide not to maintain a policy of life insurance on a shareholder. In fact, at deposition, Ronee conceded that the agreement allowed Buckeye Sauce to discontinue paying the life insurance policy on a shareholder. This did not happen, however; James made two of the payments himself and the policy did not lapse.

{¶ 42} We are not convinced that Buckeye Sauce's failure to make two premium payments on a shareholder constitutes a breach of contract by another shareholder. Further, appellants have presented no evidence of damage or injury flowing from this alleged breach — they have not claimed that they are owed the amount that James paid to National Life Insurance for the two payments on his policy or any other cognizable injury.

{¶ 43} Accordingly, the third assignment of error is overruled.

**D. Receiver**

{¶ 44} In the fourth assignment of error, appellants argue that the trial court erred in denying its motion to appoint a receiver.

{¶ 45} Appellants filed a motion to appoint a receiver in October 2018, arguing that a receiver was necessary because the "assets of [Buckeye Sauce] are in clear and present danger of being lost or injured." The trial court denied the motion in its July 2020 order granting appellants shareholder status.[6] Appellants did not appeal the court's decision at that time.

{¶ 46} An order granting a motion to appoint a receiver is final and appealable. *Ralls v. 2222 Internatl., L.L.C.*, 8th Dist. Cuyahoga No. 108314, 2019-Ohio-4261, ¶ 9. This court has held, however, that the denial of a motion to appoint a receiver is not always a final, appealable order and "this issue and its analysis turns on the application of the facts of each case to R.C. 2505.02." *Id.* at ¶ 10.

{¶ 47} If we were to determine that that the denial of appellants' motion is a final, appealable order as the appellants have argued, then their appeal of the denial is untimely under App.R. 4. The trial court denied appellants' motion on July 23, 2020, and the notice of appeal in this case was not filed until July 20, 2021. For their appeal to be timely, they would have had to file their notice of appeal within 30 days of July 23, 2020, which they failed to do.

---

[6] Appellants further contend they made a "renewed" plea for a receiver. That request was part of their response to the defendants' motion for summary judgment and was filed on December 27, 2019, six months prior to the trial court's journal entry denying their motion to appoint a receiver. There is no evidence in the record appellants ever filed a renewed motion to appoint a receiver after their initial motion was denied.

{¶ 48} If this court determines that the order is nonfinal, then this court is without jurisdiction to review it because it is axiomatic that an order must be final before an appellate court can review it. Under either circumstance, appellants' argument fails.

{¶ 49} Pursuant to R.C. 2505.02(B), and as pertinent to this case,

An order is a final order that may be reviewed, affirmed, modified, or reversed * * * when it is * * *

(2) An order that affects a substantial right made in a special proceeding * * * [or]

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 50} The trial court determined that a receiver was not necessary because "Plaintiffs have not demonstrated that the business is 'insolvent or in imminent danger of insolvency.' R.C. 2735.01(A)(6)." Journal Entry No. 113954412 (July 23, 2020).

{¶ 51} The trial court's denial of plaintiffs' motion to appoint a receiver does not affect a substantial right in this case because plaintiffs cannot show that if they do not appeal at this time that they will be foreclosed from relief on their complaint. Like *Ralls*, 8th Dist. Cuyahoga No. 108314, 2019-Ohio-4261, this case is based on allegations of breach of contract, breach of fiduciary duty, and other associated

causes of action concerning a business, and these claims remain pending. *See Ralls* at ¶ 19-22; *see also Garden v. Langermeier*, 2017-Ohio-972, 86 N.E.3d 645 (8th Dist.) (appeal dismissed for lack of a final order because other causes of action remained and appellants failed to show that without an immediate appeal they would be foreclosed from additional relief when case was eventually considered on the merits).

{¶ 52} The trial court's denial of the motion to appoint a receiver also does not deny a provisional remedy because it does not determine the action or prevent a judgment in favor of the appealing party pursuant to R.C. 2505.02(B)(4)(a) or prohibit a meaningful remedy on appeal following final judgment under R.C. 2505.02(B)(2).

{¶ 53} Appellants' sole claim under this assignment of error is that a receiver is necessary to preserve remaining corporate assets and to set up appropriate corporate governance. They have not argued that this court has jurisdiction or that their appeal of the denial of their motion is timely, however, and absent any cohesive argument from appellant, we decline to address their claims further. Based on these facts, the trial court's denial was not a final appealable order.

{¶ 54} The fourth assignment of error is overruled.

## III. Conclusion

{¶ 55} To be clear, our finding that appellants, as minority shareholders, have standing to assert a breach of the Buy-Sell Agreement does not affect our holding that the trial court did not err in denying appellants' motion for partial

summary judgment. There was no evidence presented that any purported breach by Essie of the Buy-Sell Agreement that Buckeye Sauce had with a prior deceased shareholder would render the agreement unenforceable as to Essie's estate.

{¶ 56} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

CORNELIUS J. O'SULLIVAN, JR., JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

EILEEN T. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 57} Respectfully, I concur in judgment only with majority's resolution of the first assignment of error. The majority's analysis is well-reasoned and supported by the record and relevant case law. I write separately only to express my belief that in resolving this interlocutory appeal, we have been placed in the unusual position of being asked to rely on the trial court's prior judgment regarding the appellants' status as minority shareholders when assessing whether the appellants also have standing to pursue claims against the estate of Essie Williams. As noted by the

majority, the trial court's July 22, 2020 judgment declaring the appellants to be minority shareholders relied on conclusions previously reached by the probate court in Cuyahoga P.C. No. 2014-EST-203117. I do not dispute the validity of the trial court's decision under the circumstances presented in this case. However, it must be noted that the underlying decision of the probate court was rendered without a comprehensive understanding of the corporate structure, and is arguably contrary to the terms and intent of the corporation's Buy-Sell Agreement. I recognize that the discretion afforded to the probate court and the trial court was significantly restrained in each instance due to Buckeye Sauce's own inaction, including the corporation's failure to pursue a claim against the estate of James Williams and its failure to file a timely appeal in *Gissentaner v. Buckeye Sauce Corp.*, 8th District Cuyahoga No. 109984. Yet, I am reluctant to base a finding of standing in this appeal based upon prior judgments that were unable to consider the intent of the Buy-Sell Agreement or otherwise assess the merits of the corporation's counterclaim for declaratory judgment. In my view, had the lower courts been afforded the discretion to truly assess whether the shares inherited from James were subject to corporate redemption under the Buy-Sell Agreement, the complications associated with this ongoing civil litigation would have been resolved several years ago. Nevertheless, I join the majority's determination that, assuming the appellants have standing here, the trial court's judgment must be affirmed based on the unambiguous language set forth in the Buy-Sell Agreement.