[Cite as *Hirsi v. Davis Creek Auto Sales*, 2016-Ohio-7569.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Asha Hirsi, et al., | : | |
| Plaintiffs-Appellees, | : | |
| | | No. 15AP-415 |
| v. | : | (C.P.C. No. 13CV-7271) |
| Davis Creek Auto Sales, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on November 1, 2016

**On brief:** *Mark J. Miller*, for appellees.

**On brief:** *Marcell Rose Anthony*, for appellants. **Argued:** *Marcell Rose Anthony*.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendants-appellants, Davis Creek Auto Sales (also identified in the record as Davis Creek Auto Group, and referred to herein as "Davis Creek") and its owner, Mehrdad Pourfarhadi, appeal a judgment of the Franklin County Court of Common Pleas, filed on April 15, 2015, following a jury verdict finding Davis Creek liable for money damages to plaintiffs-appellees, Asha Hirsi and Mohammed Salem, for their breach of contract claims. The jury further found Pourfarhadi not liable for breach of contract, and Hirsi and Salem not liable for Davis Creek and Pourfarhadi's counterclaims. Davis Creek and Pourfarhadi seek to have the jury verdict in favor of Hirsi and Salem reversed and judgment entered in favor of Davis Creek. Because we find that the trial court improperly excluded certain evidence proffered by Davis Creek and Pourfarhadi, we remand for a new trial.

No. 15AP-415

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   The record indicates that the parties had known each other for many years prior to the events that gave rise to this case, which began as an action for money damages by Hirsi and Salem against Davis Creek and Pourfarhadi for breach of an oral contract ("the contract") for the sale of Hirsi's 2005 Mercedes Benz ("the car").  Pourfarhadi is a car dealer from West Virginia, where his business, Davis Creek, is located.  Davis Creek and Pourfarhadi participate in auto auctions conducted by Manheim Ohio in Grove City, Ohio.  In March 2011, Salem was engaged in the wholesale car sale business in the Columbus area and had represented Davis Creek and Pourfarhadi at auto auctions in Ohio, including Manheim Ohio.  The record indicates that, in exchange for Salem's services on behalf of Davis Creek and himself, Pourfarhadi allowed Salem to sell vehicles in his own right at Manheim Ohio under Davis Creek's permit.  Hirsi was Salem's friend and, through him, Hirsi had made contact with Pourfarhadi.

{¶ 3}   The record before this Court also contains apparent inconsistencies and contradictions regarding when, where, and from whom Hirsi purchased the car, how long she had it before it was sold at auction under Davis Creek's permit, whether the parties entered into an oral contract regarding the sale of the car, who delivered the car to the auction for sale, whether Pourfarhadi paid the sale proceeds to Salem, and whether Salem and Hirsi's conduct damaged the business interests of Davis Creek and Pourfarhadi.

{¶ 4}   Hirsi and Salem allege that on March 1, 2011, Hirsi had purchased the car from Alex Auto Sales in Columbus, Ohio for $15,500[1] with Salem's assistance.  Salem accompanied her to Alex Auto Sales, where he paid for the car using money she provided. They allege that an employee of Alex Auto Sales gave Salem a bill of sale and a signed certificate of title, which Salem handed over to Hirsi.  Hirsi placed the title in the car's glove compartment and "forgot about it," never signing it or registering the car in her name with the Ohio Bureau of Motor Vehicles ("BMV").  (Mar. 9, 2015 Tr. Vol. I at 72.) Hirsi stated she had not paid, nor been charged for, sales tax or transfer fees when she bought the car because Alex Auto Sales just gave her the title without executing a transfer

---

[1] Hirsi testified that she had borrowed $10,000 of the purchase price from Shimaa Qaroot, whom she refers to as her cousin, even though they are not related by blood.  Qaroot was not called to testify at trial.

of title of the vehicle specifically to her. Hirsi stated she did not sign the title because she would have had to pay taxes on the purchase.

{¶ 5} Hirsi and Salem testified further that Hirsi began having problems with the car almost immediately and wanted to get rid of it. Salem contacted Pourfarhadi, who met with them at Salem's house on March 4, 2011. They allege that Pourfarhadi agreed to take Hirsi's car to auction, sell it for her under Davis Creek's permit, pay the auction fees out of the sale proceeds and give the remaining amount to Hirsi and Salem. They further allege that Pourfarhadi left Salem's house with the car on March 4, 2011 and sold it at auction later that month, but did not give Hirsi the sale proceeds. Hirsi stated she received a letter from Pourfarhadi that stated he was not "going to pay [her] back." (Tr. Vol. I at 60.)

{¶ 6} Hirsi filed a report with the Grove City Division of Police ("GCPD") in August 2011, indicating that Pourfarhadi had stolen her car on March 30, 2011. GCPD investigated the report and on October 20, 2011, advised Hirsi that the case was a civil matter, in part because Hirsi was unable to show that the car had been registered in her name. GCPD cleared Hirsi's theft report without charging anyone.

{¶ 7} On April 11, 2013, Hirsi and Salem filed suit against Davis Creek and Pourfarhadi in the Franklin County Municipal Court for breach of contract, seeking damages in the amount of $14,700, which they claim represents the proceeds of the sale after the auction fees were paid.

{¶ 8} On May 13, 2013, Davis Creek and Pourfarhadi filed an answer denying all allegations set forth in the complaint and asserting that neither Hirsi nor Salem was the lawful owner of the car and thus had no right to sell it, rendering the alleged contract invalid. Davis Creek and Pourfarhadi also filed counterclaims "sounding in contract, principal-agency, fraud, conversion, civil theft, tortious interference in business, forgery, [and] claims for frivolous lawsuits" against Hirsi and Salem. (May 13, 2013 Answer and Countercl. at 2.) Davis Creek and Pourfarhadi allege that they were barred from the auction for one month as a result of the sale of Hirsi's car under Davis Creek's permit. Davis Creek and Pourfarhadi also allege that Hirsi and Salem filed a false police report by claiming that the car that sold at the auction was titled in their names, when it was not. Davis Creek and Pourfarhadi claim to have lost $150,000 in business as a direct and

proximate cause of Hirsi's and Salem's actions. They also claim entitlement to punitive damages in excess of $250,000.

{¶ 9} On June 7, 2013, Hirsi and Salem filed an answer denying the allegations set forth in the counterclaims.

{¶ 10} By judgment entry filed June 10, 2013, the Franklin County Municipal Court transferred the case to the Franklin County Court of Common Pleas because the amount of damages counterclaimed exceeded the municipal court's jurisdiction.

{¶ 11} On July 7, 2014, Hirsi and Salem moved for summary judgment on Davis Creek and Pourfarhadi's counterclaims.

{¶ 12} Also on July 7, 2014, Davis Creek and Pourfarhadi filed a motion for partial summary judgment as to Hirsi and Salem's breach of contract claim, reiterating their argument that Hirsi and Salem never held title to the car and thus were not the lawful owners and, consequently, there could not be a valid contract to sell the car. Davis Creek and Pourfarhadi also sought summary judgment on their counterclaim of civil theft against Hirsi and Salem.

{¶ 13} On July 21, 2014, Davis Creek and Pourfarhadi dismissed their counterclaims for contract, principal-agency, and frivolous lawsuits.

{¶ 14} By judgment entry filed September 29, 2014, the trial court ruled on the parties' summary judgment motions. It granted Hirsi and Salem's motion for summary judgment on the civil theft counterclaim, finding that it was barred by the statute of limitations, but denied summary judgment as to the remaining counterclaims for fraud, conversion, tortious interference with business relations, and forgery.

{¶ 15} The trial court simultaneously denied Davis Creek and Pourfarhadi's motion for summary judgment on Hirsi and Salem's breach of contract claim, finding that it could not "discern whether the parties ever had an agreement to sell the car. Whether an agreement existed is a genuine issue of material fact. And, without an agreement, title issues are moot." (Sept. 29, 2014 Entry at 6.)

{¶ 16} The remaining claims proceeded to trial, with jury selection occurring on March 9, 2015. At the time of jury selection, Hirsi and Salem's trial counsel filed a motion requesting that Davis Creek and Pourfarhadi's claims for compensatory damages be bifurcated from their claim for punitive damages pursuant to R.C. 2315.21. The trial

court granted the motion over the objections of opposing counsel, and the case was tried in a bifurcated jury trial March 9 through 12, 2015.

{¶ 17} At trial, Hirsi testified she had bought the car from Alex Auto Sales on March 1, 2011. She testified further that she met with Pourfarhadi three days later, on March 4, 2011, at which time he agreed to sell the car and give her the money. She stated that she had forgotten about the title, and Pourfarhadi did not ask her for it. She acknowledged that she never signed it and never registered the car in her name.

{¶ 18} Salem testified that he had known Pourfarhadi approximately 20 years and had worked for him about 8 years. He stated that, through Pourfarhadi, he had purchased over 400 cars from different auctions. Salem described the work he performed for Pourfarhadi, which included depositing checks into Davis Creek's bank account, signing bills of sales for customers, signing titles, and flipping titles.

{¶ 19} With respect to Hirsi's car, Salem initially testified that he was with Hirsi when she obtained the car from Alex Auto Sales on March 1, 2011. Salem further testified that he filled out the bill of sale with the information provided by Hirsi, and then gave it to an employee of Alex Auto Sales to complete and sign. The Alex Auto Sales employee signed the title on the reverse side and returned it to Salem, who gave it to Hirsi. However, Salem later acknowledged that he converted the cash provided by Hirsi into a cashier's check made payable to Ohio Auto Auction to pay for the car on October 21, 2010.

{¶ 20} According to Salem, he contacted Pourfarhadi in early March 2011 about selling Hirsi's car. Salem testified that he did not remember who sold Hirsi's car at the auction. His testimony was inconsistent as to whether he was at the auction when Hirsi's car sold, initially stating he was there to sell two cars for customers, but later testifying that he was not at the auction when the car sold. Salem denied selling Hirsi's car at the auction, stating that Pourfarhadi sold it.

{¶ 21} Salem testified that after the auction, Pourfarhadi handed him three Manheim Ohio checks, one for Hirsi's car and one for each of Salem's two customers. The checks were payable to Davis Creek and totaled $24,795.[2] Salem took the checks to Davis

---

[2] Manheim Ohio issued three checks to Davis Creek, one for each of three vehicles that sold at the auction on or about March 15, 2011: (1) a check in the amount of $13,990, dated March 15, 2011 for a 2005 Mercedes

Creek's local bank and deposited them. The record reflects that all three checks were deposited to the Davis Creek account on March 15, 2011. It is not clear from the record whether Salem intended to deposit the checks into Davis Creek's bank account or a different bank account, but the checks initially were deposited in the Davis Creek account. The $24,795 then was moved into the account of the person who had loaned Hirsi some of the money to buy the car, before being moved back to the Davis Creek account. Salem attributed any mistake in handling the money to the bank teller.

{¶ 22} Salem testified that he later found out that Pourfarhadi did not release the sales proceeds because he was upset with Salem for an incident that happened at the auction.

{¶ 23} Salem acknowledged receiving from Pourfarhadi two checks payable to him, one dated April 6, 2011, in the amount of $12,330,[3] and the other dated April 11, 2011 in the amount of $10,000. According to Salem, however, none of that money represented proceeds from the sale of Hirsi's car.

{¶ 24} The testimony of the owner of A & S Auto Sales ("A & S") provided a different account of when, and from whom, Hirsi bought the car. A & S's owner testified that his company, not Alex Auto Sales, sold the car to Hirsi, and explained how the owner of Alex Auto Sales used A & S's location to work as a wholesaler. A & S's owner initially testified that he was present at the time of sale and confirmed that Hirsi paid him for the car.

{¶ 25} A & S's owner testified further, however, that Hirsi used the car for awhile, then decided to sell it. He stated that he had tried "to sell the car for her for a long time and didn't sell, and then [Salem] decide he's going to sell it again at the auction." (Mar. 10, 2015 Tr. Vol. II at 155.)

{¶ 26} The testimony of A & S's owner indicated that the car had not been on the lot of Alex Auto Sales when Hirsi bought it and that Salem actually had purchased the car at auction under Alex Auto Sales' permit in 2010. When questioned about the validity of the bill of sale dated March 1, 2011 that Alex Auto Sales provided to Hirsi, the owner of

---

(Hirsi's car); (2) a check in the amount of $2,815, dated March 15, 2011, for a 2000 Dodge; and (3) a check in the amount of $7,990, dated March 16, 2011, for a 2001 BMW.

[3] The check was made payable to Mohamed Salem in the amount of $12,330, but when Pourfarhadi's trial counsel questioned Salem about the check, counsel erroneously stated the check amount as $12,350.

No. 15AP-415

A & S stated that the date on the bill of sale did not matter. His testimony as to how long Hirsi had the car before deciding to sell it at auction also appears to contradict Hirsi's and Salem's accounts:

> Q: So I just want to confirm just one more time. It's your testimony that you never had a 2005 Mercedes-Benz on the Alex Auto Sales lot, yes or no?
>
> A: No, I was having it on the lot for some time.
>
> Q: You had it on the lot?
>
> A: Yes.
>
> Q: When did you have it on the lot?
>
> A: Okay. He buys a car; they deliver the car. They keep it couple days. He come take it. So after two months, hey, can I take another car from you and leave that? He leave it for a month, two months. You know what, they can't sell it. Let's run it through the auction. That's how we work. But whatever was on the lot, it belong to them.
>
> Q: I think you told Detective Ruslander at the Grove City Police Department that the Mercedes-Benz was never on the lot.
>
> A: Again, that point it doesn't make any difference. At that pont [sic] it doesn't make any different [sic] whether it's on the lot or not on the lot. In the end, it belongs to them. The lot -- whatever [sic] it came, he took it. Then she tried to trade it in. So the lot doesn't change anything. I don't understand your point really. Like, what's make a difference to you?

(Tr. Vol. II at 161-62.)

{¶ 27} In response to questions from the trial court, the owner of A & S testified that the owner of Alex Auto Sales bought the car from Manheim Ohio at Salem's request. The auction delivered the car to A & S's location and, a couple days later, Salem came in, took the bill of sale, and sold the car to Hirsi. A couple of months after that, Hirsi and Salem returned with the car to trade it in. The owner of A & S testified that he tried to sell it but could not get the price Hirsi and Salem wanted.

{¶ 28} An assistant manager of Manheim Ohio also testified, stating that he knew both Salem and Pourfarhadi, that Salem was known as Pourfarhadi's representative at the auctions, and that Pourfarhadi allowed Salem to sell his own automobiles at Manheim

Ohio auctions under Davis Creek's permit. He also testified that he had found no record that Pourfarhadi had ever been suspended from doing business at Manheim Ohio.

{¶ 29} Relying on Manheim Ohio's business records, the assistant manager testified that Hirsi's car had traded hands several times at the auction under different dealers. Manheim Ohio's records showed that Hirsi's car sold under Davis Creek's permit on March 8, 2011, but that the buyer withdrew due to defects with the car. The auction did not have a record of the individual seller of that car—only that it sold under Davis Creek's permit. The auction records reflected that there was no title present for the car at the time of that sale. Manheim Ohio's records reflect that the car then sold for $14,250 under Davis Creek's permit on March 15, 2011. The record further reflects that Manheim Ohio deducted fees totaling $260 from the sale price, leaving proceeds in the amount of $13,990. On March 15, 2011, Manheim Ohio issued a check payable to Davis Creek in the amount of $13,990 for the sale of the car.

{¶ 30} Pourfarhadi testified that he had engaged Salem to represent Davis Creek and himself at Manheim Ohio, and that he had allowed Salem to pick up Manheim Ohio auction checks made payable to Davis Creek. Pourfarhadi stated that he never paid Salem for representing him at Manheim Ohio, but allowed Salem to buy or sell cars through Davis Creek. He testified that he never gave Salem power of attorney to buy or sell cars for Davis Creek at auction, to sign his own name or Pourfarhadi's name to titles, bills of sale, purchase agreements, sale agreements, checks or other documents. He testified that Salem "was an independent contractor and he was a gofer. That's all." (Tr. Vol. II at 243.)

{¶ 31} Pourfarhadi testified that he never entered into an oral contract regarding Hirsi's car and denied receiving any title from Hirsi. Further, he denied personally selling any 2005 Mercedes Benz at auction around March 2011. He testified that he had approved Salem's request in February or March 2011 to sell some cars under Davis Creek's permit but did not know the make of any of the cars Salem intended to take to auction. Pourfarhadi testified that he learned that Salem had sold a Mercedes Benz under Davis Creek's permit when the sale went to arbitration after the buyer withdrew due to defects with the car. Pourfarhadi stated he asked Salem "to pick it up and take it back." (Tr. Vol. II at 192.)

{¶ 32} Pourfarhadi testified that he also went to arbitration regarding Salem selling cars under Davis Creek's permit and buying the same cars under another dealer's permit.

{¶ 33} Pourfarhadi testified that, after the three Manheim Ohio checks totaling $24,795 were deposited in Davis Creek's bank account, that amount of money was withdrawn from the account without his knowledge. Pourfarhadi and the bank investigated and determined that Salem had deposited the money, withdrawn it, and asked the bank to transfer the money to someone else's account, "and he acted like it was me." (Tr. Vol. II at 199.) Pourfarhadi acknowledged that the bank redeposited the entire $24,795 into Davis Creek's bank account.

{¶ 34} Pourfarhadi testified that he fired Salem in March 2011. He further testified that he paid Salem $22,300 in April 2011 as final payment for cars Salem had sold at auction under Davis Creek's permit, including Hirsi's car. Payment was made in the form of two Davis Creek checks, one for $12,330 dated April 6, 2011, and the other for $10,000 dated April 11, 2011. As noted earlier, Salem acknowledged receiving and cashing those checks, although he denied that any of that money was for Hirsi's car.

{¶ 35} Pourfarhadi also testified regarding the amount he was alleging for damages as a result of Salem's fraud, conversion, tortious interference in business, and forgery.

{¶ 36} At the conclusion of the trial, the jury returned a verdict in favor of Hirsi and Salem on their breach of contract claim against Davis Creek, and awarded $13,990 in compensatory damages. The jury found Pourfarhadi not liable on the breach of contract claim. The jury further found Hirsi and Salem not liable on Davis Creek and Pourfarhadi's counterclaims for forgery, tortious interference with business relations, conversion, and fraud.

{¶ 37} Davis Creek and Pourfarhadi timely appealed.

## II. ASSIGNMENTS OF ERROR

{¶ 38} Davis Creek and Pourfarhadi present four assignments of error for our review:

> [1.] Whether the trial court erred by failing to admit Appellants' evidence, including an Affidavit by Appellants which was submitted as part of Appellants' testimony on the merits, and including the certified BMV record which reflected that there was no certificate of title to the subject

automobile held by Appellees, and including evidence from the police that the subject automobile had been stolen.

[2.] Whether the trial court erred by erroneous jury instructions which were not submitted for final approval to Appellants' counsel, and whether the trial court erred by failing to instruct the jury on the necessity for a certificate of title to an automobile as a requisite of valid ownership of an automobile.

[3.] Whether the jury verdict was against the manifest weight of the evidence when the jury held in favor of Appellee on Appellee's claim of breach of oral contract, and against Appellant on claims of tortious interference with business, fraud, conversion, and/or forgery.

[4.] Whether Appellants' constitutional guarantees of due process were violated.

## III. DISCUSSION

### A. First Assignment of Error—Whether the Trial Court Should Have Admitted Certain Evidence Proffered by Pourfarhadi

{¶ 39} A trial court generally has discretion to admit or exclude evidence, and its decision will be reversed only upon a showing of an abuse of discretion. *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, ¶ 43, citing *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317. " ' "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." ' " *State v. Weaver*, 38 Ohio St.3d 160, 161 (1988), quoting *Martin v. Martin*, 18 Ohio St.3d 292, 295 (1985), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). This deferential standard recognizes that credibility issues are left for the trier of fact. *Brooks-Lee v. Lee*, 10th Dist. No. 11AP-284, 2012-Ohio-373, ¶ 13. "[A] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on the credibility of witnesses and evidence is not." *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 40} In their first assignment of error, Davis Creek and Pourfarhadi argue that the trial court's rulings to exclude certain defense exhibits offered into evidence are errors of law. Davis Creek and Pourfarhadi sought to have admitted as evidence: (1) Pourfarhadi's affidavit, (2) a certified BMV record, and (3) police records indicating that Hirsi's car was a stolen vehicle.

{¶ 41} The trial court makes the initial determination of admissibility in accordance with Evid.R. 104(A). The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Belton*, __ Ohio St.3d __, 2016-Ohio-1581, ¶ 128, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. "An abuse of discretion occurs where a trial court's attitude is unreasonable, arbitrary, or unconscionable." *Delta Fuels, Inc. v. Ohio Dept. of Transp.*, 10th Dist. No. 15AP-28, 2015-Ohio-5545, ¶ 51, citing *Blakemore*. We also review the decision of the trial court for abuse of discretion with the understanding that if the trial court erred on a question of law, even with respect to an evidentiary issue, such is an abuse of discretion. *Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15.

{¶ 42} A central issue the jury had to decide in this case was whether the parties had entered into an oral contract under which Hirsi and Salem had agreed to transfer Hirsi's car and the car's title to Pourfarhadi, who had agreed to sell the car at auction under Davis Creek's permit and to remit to Hirsi and Salem the sale proceeds remaining after auction fees had been paid.

{¶ 43} Certain facts are largely undisputed. Hirsi had purchased the car and wanted to sell it. In early March 2011, Salem had Pourfarhadi's permission to sell some cars at Manheim Ohio under Davis Creek's permit. On March 15, 2011, Hirsi's car sold for $14,250 at Manheim Ohio under Davis Creek's permit. That same day, Manheim Ohio issued three checks payable to Davis Creek totaling $24,795 for the sale of three cars, $13,990 of which was for the sale of Hirsi's car, after deducting $260 in auction-related fees from the sale proceeds. Salem deposited the three Manheim Ohio checks into Davis Creek's bank account. In April 2011, Salem received payment in the amount of $22,300 from Pourfarhadi for cars Salem had sold at Manheim Ohio.

{¶ 44} Among the disputed facts in this case is whether Hirsi had lawfully transferred the car's title to Davis Creek and/or Pourfarhadi. Hirsi and Salem argue that they had performed their duty under the oral contract when they allowed Pourfarhadi to take Hirsi's car with the unsigned certificate of title still in the car's glove compartment.

{¶ 45} R.C. 4505.03 provides as follows:

> No person, except as provided in sections 4505.032 and 4505.05 of the Revised Code, shall sell or otherwise dispose of a motor vehicle without delivering to the buyer or transferee of it a certificate of title with an assignment on it as is necessary to show title in the buyer or transferee; nor shall any person, except as provided in section 4505.032 or 4505.11 of the Revised Code, buy or otherwise acquire a motor vehicle without obtaining a certificate of title for it in the person's name in accordance with this chapter.

{¶ 46} Hirsi testified throughout the proceedings that she had never signed the car title provided by Alex Auto Sales or caused the title to be registered in her name. Nothing in the record indicates that Hirsi was exempt from the provisions of R.C. 4505.03. Thus, Hirsi, in order "to sell or otherwise dispose of the car," was required to deliver to Davis Creek and/or Pourfarhadi a certificate of title containing the necessary assignment. *Id.*

{¶ 47} Davis Creek and Pourfarhadi offered as evidence a certified copy of the record of the BMV, which the BMV had provided in response to a subpoena to produce records in its possession regarding the title history of Hirsi's car. The certified record indicated that the car had never been titled in the name of any of the parties.

{¶ 48} Hirsi and Salem's trial counsel objected to the admission of the certified BMV record as hearsay because no one from the BMV had testified about the record. The trial court sustained the objection for lack of foundation.

{¶ 49} We find that the trial court abused its discretion by excluding the certified BMV record. In general, a certified government record is excepted from the hearsay rule. The admissibility of public records and certified records as self-authenticating is governed by several rules, including Civ.R. 44(A)(1), Evid.R. 803(8), 901(B)(7), and 902. *See also Freeman v. Ohio Dept. of Human Servs.*, 10th Dist. No. 95APE03-359, (Dec. 14, 1995). Civ.R. 44(A)(1) provides as follows:

Authentication.

(1) Domestic. An official record, or an entry therein, kept within a state or within the United States or within a territory or other jurisdiction of the United States, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record in which the record is kept or may be made by any public officer having a seal of office and having official duties in the political subdivision in which the record is kept, authenticated by the seal of his office.

And, pursuant to Evid.R. 803(8), qualifying public records and reports are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

Staff Notes to Evid.R. 803(8) include this language:

[T]he rule permits introduction of public reports subject to the exceptions enumerated. Several Ohio statutory provisions accomplish a similar result. See, for example, R.C. 2317.39 and 2317.42 regarding public records. Also, authorizing public records to be introduced into evidence as an exception to the hearsay rule are numerous Ohio Supreme Court cases including: *Howells v. Limbeck* (1960), 172 OS 297, 16 OO2d 68, 175 NE2d 517 (court records); *Carson v. Metropolitan Life Insurance Company* (1951), 156 OS 104, 45 OO 103, 100 NE2d 197 (records of coroner); and more recently the court held at R.C. 2317.42 authorizes admission of public records as evidence unless the statements contained in the record are themselves hearsay, recognizing the familiar "totem pole" hearsay problem. *Westinghouse Electric v. Dolly Madison Leasing & Furniture Corp.* (1975), 42 OS2d 122, 71 OO2d 85, 326 NE2d 651.

{¶ 50} Evid.R. 901(A) provides generally that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "This low threshold standard does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be." (Emphasis omitted.) *State v. Easter*, 75 Ohio App.3d 22 (4th Dist.1991), citing 1 Weissenberger, *Ohio Evidence*, Section 901.2 at 4-5 (1991). Evid.R. 901(B) offers examples of authentication or identification conforming to the requirements of the rule. Evid.R. 901(B)(7) describes public records and reports:

> Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

The Staff Notes to Ohio Evid.R. 901(A) indicate that "certain writings, admissible as evidence, need not be authenticated as a condition precedent to admissibility. Such writings, particularly certain public documents, are said to be self-authenticating. Rule 902 governs admissibility by self-authentication."

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> * * *
>
> (4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio.

Evid.R. 902(4). The certification attached to the BMV record included this language on its face:

> This certifies that a search has been made of the files and records of the Ohio Registrar of Motor Vehicles, that the

> attached documents are true and accurate copies of the files or records of the Registrar, and that the Registrar's official seal has been affixed in accordance with Ohio Revised Code (ORC) 4501.34(A), which states, in part "[The Registrar] shall adopt a seal bearing the inscription 'Motor Vehicle Registrar of Ohio.' The seal shall be affixed to all writs and authenticated copies of records, and when it has been so attached, such copies shall be received in evidence with the same effect as other public records. All courts shall take judicial notice of the seal."

(Defs.' Ex. 5.)  The certification bore the signature of the BMV Records Request Clerk and the official seal of the Motor Vehicle Registrar of Ohio.

{¶ 51} There is also some statutory guidance on this issue at least by analogy. R.C. 2907.39(E) contains specific language about certified records of drivers' licenses and state identification cards issued by the BMV in cases when minors use false identification to gain access to adult entertainment establishments.  In such cases, when an affirmative defense is raised in a criminal action against the operator, the "registrar of motor vehicles or the deputy registrar * * * shall be permitted to submit certified copies of the records, in the registrar's or deputy registrar's possession, of the issuance of the license or identification card in question, in lieu of the testimony of the personnel of the bureau of motor vehicles in the action." *Id.*  Similar language can also be found in R.C. 2925.58 concerning affirmative defenses to unlawful sale of pseudoephedrine to minors and R.C. 2927.022 concerning affirmative defenses for the unlawful sale of cigarette, tobacco or alternative nicotine products to minors.  The jury should have had the benefit of reviewing the certified record of the BMV in deciding this matter.

{¶ 52} The jury in this matter was required to wade through a morass of inconsistent and contradictory testimony with respect to when, how, and by whom the car in question was originally obtained, who owned the car at the time it sold on March 15, 2011, and who sold the car at Manheim Ohio. Because the inconsistences and contradictions put into question the credibility of the witnesses, the certified BMV record could have been helpful to the jury as it weighed and considered the evidence in this matter.  It was an abuse of discretion to exclude the evidence.

{¶ 53} This Court finds that the trial court improperly excluded the certified, self-authenticating BMV record of the title history of the car in question. A certified copy of a government record maintained in the ordinary course of business speaks for itself; no testimony is required from the authenticating agency.

{¶ 54} We, therefore, sustain Davis Creek and Pourfarhadi's first assignment of error.

## B.  Second, Third, and Fourth Assignments of Error—Moot

{¶ 55} Because we have determined to reverse and remand based on Davis Creek and Pourfarhadi's first assignment of error, the remaining assignments of error are moot and are considered no further.

## IV.  CONCLUSION

{¶ 56} Accordingly, we sustain Davis Creek and Pourfarhadi's first assignment of error and decline to consider their second, third, and fourth assignments of error, finding them to be moot.  This matter is hereby remanded to the Franklin County Court of Common Pleas for a new trial consistent with this decision.

*Judgment reversed and cause remanded.*

TYACK and KLATT, JJ., concur.
_____