[Cite as *State ex rel. Sales v. Ohio Pub. Emps. Retirement Bd.*, 2017-Ohio-7835.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Gary N. Sales, M.D., | : | |
| Relator, | : | |
| v. | : | No. 16AP-582 |
| Ohio Public Employees Retirement Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on September 26, 2017

*Gary N. Sales,* pro se.

*Michael DeWine,* Attorney General, *John J. Danish* and *Mary Therese J. Bridge,* for respondent Ohio Public Employees Retirement Board.

*Michael DeWine,* Attorney General, and *Erin E. Butcher,* for intervenor-respondent Ohio Department of Rehabilitation and Correction.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, P.J.

{¶ 1} Gary N. Sales, M.D., filed this action in mandamus seeking a writ to compel the Ohio Public Employees Retirement Board ("OPERS Board") to grant him membership status and service credit in the Ohio Public Employees Retirement System ("OPERS").

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of

law.  The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3}  Dr. Sales has filed objections to the magistrate's decision.  OPERS Board has filed a memorandum in response.  The Ohio Department of Rehabilitation and Correction ("ODRC"), which utilizes the services of Dr. Sales, has also filed a memorandum opposing the objections filed by Dr. Sales.  The case is now before the court for a full, independent review.

{¶ 4}  Dr.  Sales was providing services to ODRC as far back as 1997.  OPERS Board decided that Dr. Sales was an independent contractor with ODRC and not an employee of ODRC.  As a result, OPERS Board refused him membership in OPERS and denied him credit with OPERS for the prior years of service.

{¶ 5}  Dr. Sales' service with ODRC was governed by four written contracts.  The contracts included a provision which includes a statement which indicates that Dr. Sales acknowledged he was engaged in an independent business with a stipulated hourly rate of pay.  Dr. Sales was required to submit a contract payment form in order to receive payment.

{¶ 6}  In many ways, Dr. Sales was treated the same as full-time employees of ODRC.  He worked at an ODRC facility.  His schedule was controlled by employees of ODRC.  He clocked in and clocked out.  He was docked six minutes worth of pay for leaving two minutes early on one occasion.

{¶ 7}  Usually the decision about whether someone is an employee or an independent contractor turns on the amount of control exercised over the individual performing services.  However, Ohio has enacted R.C. 145.012 which defines "[c]ontract employee" as set forth in the magistrate's decision.  Ohio Adm.Code 145-1-42(A)(2) also must be considered, as interpreted in *State ex rel. Schaengold v. Ohio Pub. Emp. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760.

{¶ 8}  This case raises the question of whether a person who works in a prison environment, especially a psychiatrist, can be an independent contractor.  Dr. Sales had to clock in and clock out.  He carried an official I.D. badge.  He attended training required by ODRC.  His malpractice insurance was given to him by ODRC, which implies that he had no control over what entity provided the coverage.  His schedule was determined by

ODRC nursing staff. Treatment decisions had to be in accord with ODRC policies and guidelines.

{¶ 9} Clearly, ODRC wanted to consider Dr. Sales to be an independent contractor but hold him to the control and restraints over an employee, all the while not having to pay pension contributions or social security taxes, income tax withholding, unemployment taxes, and workers' compensation assessments on him. If Dr. Sales had been injured ODRC would presumably have argued that he was not a state employee, to avoid responsibility for his medical expenses.

{¶ 10} We sustain the objections to the magistrate's decision as to the conclusion of law. Given the amount of control exercised over Dr. Sales, we find that he was not an independent contractor but a part-time employee of ODRC. As a result, we grant him the writ of mandamus as requested in his complaint.

*Objections sustained; writ granted.*

BRUNNER, J., concurs.
LUPER SCHUSTER, J., dissents.

LUPER SCHUSTER, J., dissenting.

{¶ 11} I respectfully dissent. At issue is whether the OPERS Board abused its discretion by denying Dr. Sales' request for OPERS service credit for the time he worked as a psychiatrist at an ODRC facility. As the magistrate outlined, Ohio Adm.Code 145-1-42(A) sets forth the factors defining both a contract employee and an independent contractor, for the purpose of determining if an individual is a public employee.

{¶ 12} Unlike the majority, I do not believe the control ODRC exerted over Dr. Sales, including providing supplies and equipment, necessarily overrides and outweighs the following factors favoring a finding that Dr. Sales was an independent contractor and thus not a public employee: (1) Dr. Sales was a party to a contract that outlined the benefits and responsibilities of both parties and included an acknowledgment that Dr. Sales was engaged in an independent business; (2) ODRC paid Dr. Sales a fee for his services, which was well-above the per hour compensation of full-time civil service ODRC psychiatrists; (3) Dr. Sales was not eligible for workers' compensation or unemployment compensation; (4) Dr. Sales was not eligible for fringe benefits, except for

professional liability insurance covering his work at the ODRC facility; (5) Dr. Sales did not appear on the public payroll; and (6) Dr. Sales received an IRS form 1099.

{¶ 13} Accordingly, I would find some evidence supports the OPERS Board's determination that Dr. Sales was not a public employee eligible for OPERS membership because he was an independent contractor. Therefore, I would adopt the decision of the magistrate and deny the requested writ of mandamus.

————————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

The State ex rel. Gary N. Sales, M.D.,          :

        Relator,                                              :

v.                                                                        :                        No. 16AP-582

Ohio Public Employees Retirement Board,   :                    (REGULAR CALENDAR)

        Respondent.                                        :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 27, 2017

---

*Gary N. Sales,* pro se.

*Michael DeWine,* Attorney General, *John J. Danish* and *Mary Therese J. Bridge,* for respondent Ohio Public Employees Retirement Board.

*Michael DeWine,* Attorney General, and *Erin E. Butcher,* for intervenor-respondent Ohio Department of Rehabilitation and Correction.

---

### IN MANDAMUS

{¶ 14} Relator, Gary N. Sales, M.D., brings this original action requesting that the court issue a writ of mandamus ordering respondent, the Ohio Public Employees Retirement Board ("board"), to grant his request for membership status and service credit in the Ohio Public Employees Retirement System ("OPERS") for the duration of his employment with intervenor-respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), between 1997 and 2003. The board determined that relator was an

independent contractor during the period in question and denied his request for service credit with OPERS. Relator also seeks an award of attorney fees in this action.

Findings of Fact:

{¶ 15} 1. Relator has been licensed as a physician by the state of Ohio since 1989.

{¶ 16} 2. Relator has been board-certified in general adult psychiatry since 1996.

{¶ 17} 3. Relator holds a law degree and was admitted to the Ohio bar in 1980.

{¶ 18} 4. Relator worked as a staff psychiatrist at Lorain Correctional Institution ("LCI"), an ODRC facility, between July 1, 1997 and February 13, 2003.

{¶ 19} 5. ODRC is a public employer.

{¶ 20} 6. The terms of relator's employment were governed by four successive contracts signed and executed by relator and ODRC. The first two contracts each covered a two-year period, and the final two contracts were for one year each.

{¶ 21} 7. During relator's employment, ODRC designated him as an independent contractor who was ineligible for OPERS credit. OPERS accordingly did not contemporaneously grant service credit for relator's time with ODRC.

{¶ 22} 8. In 2013, relator filed a request, pursuant to R.C. 145.037(B)(1), asking OPERS for a determination that he should have been classified as a public employee during his employment at LCI, and should receive service credit.

{¶ 23} 9. An OPERS staff determination rendered May 6, 2014, and OPERS senior staff determination rendered October 3, 2014, successively found that relator was an independent contractor and not entitled to OPERS credit for the period covering July 1, 1997 through June 30, 2002, some months short of the date that relator left LCI. The discrepancy between the period addressed by the staff determinations and the period of employment for relator at LCI arises because relator's R.C. 145.037(B)(1) request for service credit did not specify an exact end date for the service period in question.

{¶ 24} 10. Relator filed an appeal for review by the board, and the board assigned a hearing officer pursuant to Ohio Adm.Code 145-1-11(C)(1).

{¶ 25} 11. The board's hearing officer held a hearing and issued a report and recommendation upholding the senior staff determination, and recommending that relator was ineligible for service credit for his employment with LCI. The hearing officer's

report rectified the discrepancy in employment dates to address the entire period between July 1, 1997 and February 13, 2003.

{¶ 26} 12. The hearing officer's report concluded that relator's conditions of employment at LCI, when examined in light of the factors set forth in R.C. 145.012 and Ohio Adm.Code 145-1-42 (formerly Ohio Adm.Code 145-5-15), made relator an independent contractor who was ineligible for OPERS credit.

{¶ 27} 13. By letter dated June 16, 2016, the board informed relator that it had voted to accept the hearing officer's report finding that relator should not receive OPERS credit for the contested period.

{¶ 28} 14. The first employment agreement executed by the parties is styled "Personal Service Contract." (Certified Record of Proceedings ("CRP") at 80.) It has an effective date of July 1, 1997 and end date of June 30, 1999. Under the party rubric the contract specifies as follows: "Name of Independent Contractor[:] Gary N. Sales, J.D., M.D." (CRP at 80.)

{¶ 29} 15. The parties extended the initial contract for two years until June 30, 2001 through a contract renewal incorporating the terms of the initial contract. Subsequent renewals were effected by new contracts with some minor variation from the 1997 contract.

{¶ 30} 16. Under Article (E)(1) of the 1997 contract, "The Contractor declares that it is engaged as an independent business." (CRP at 82.)

{¶ 31} 17. The 1997 contract calls for an hourly rate of $106.25 for the first year and $109.23 for the second year, specifying 832 hours per year, or 16 hours per week. The corresponding annual compensation is given as $88,400 and $90,879.36 respectively.

{¶ 32} 18. The 1997 contract provides that "[s]ervices are to be provided on a schedule mutually agreed upon by the Contractor and the Department of Rehabilitation and Correction (DRC) contact person, consistent with DRC security and staffing concerns." (CRP at 80.)

{¶ 33} 19. The 1997 contract calls for payment upon submission of invoices by relator. Article (E)(8) of the contract provides that "[t]he contractor is responsible for completing and submitting a contract payment form * * * as appropriate." (CRP at 82.)

{¶ 34} 20. Relator performed functions identical to those of the civil service psychiatrists for ODRC. Beyond the fundamental duties of actual assessment and treatment of inmates, this included coordination of care with nurses, counselors, and psychologists, and staff and committee meetings.

{¶ 35} 21. A similarly-situated civil service psychiatrist performing the same functions for ODRC earned approximately $100,000 per year for a 40-hour work week.

{¶ 36} 22. Relator's patient schedule each day was set by the correctional institution mental health clinic nurses.

{¶ 37} 23. Relator was issued an ID card that provided institutional access and allowed him to clock in and out as required. Under Article (D)(2) of the 1997 contract, relator's performance would be monitored in various ways, including "timekeeping." Civil service psychiatrists performed under identical ID card and time clock requirements. (CRP at 81.)

{¶ 38} 24. Relator was docked six minutes time on the one occasion in which he clocked out two minutes early, even though he submitted a regular two-week invoice, as required by his contract, presenting a full quota of hours worked. The six-minute penalty corresponded to timekeeping rules for civil service employees, with time measured in tenths of an hour.

{¶ 39} 25. When working under the contracts, relator received no employment benefits, did not make an OPERS retirement contribution, and contributed instead to Social Security.

{¶ 40} 26. Relator testified he did not know whether he was eligible for workers' compensation or unemployment.

{¶ 41} 27. ODRC did not consider relator eligible for workers' compensation or unemployment compensation.

{¶ 42} 28. During his period of employment under the contracts, relator did not purchase his own malpractice insurance to cover his professional activity with LCI. He was covered by an employer policy purchased by ODRC.

{¶ 43} 29. At various times, relator attended mandatory training provided by ODRC addressing needed skills in coping with an inmate population and insuring safety in a prison environment.

{¶ 44} 30. Dr. Kathryn Burns, ODRC's chief psychiatrist from 1995 to 1999, testified that a shortage of mental health professionals serving the prison system, particularly psychiatrists, led ODRC to attract better qualified psychiatrists under a contract basis, which allowed for a higher pay than the civil service psychiatrists received, and offered contract psychiatrists the opportunity to maintain an outside private practice.

{¶ 45} 31. Dr. Burns testified that the professional duties of civil service psychiatrists and contractors were identical, and the compelling reasons for uniformity in a penal environment:

> They didn't differ. I mean, a psychiatrist was a psychiatrist was a psychiatrist, and we were hiring people as contractors and we were hiring people in civil service positions, that was their choice, because we needed psychiatric work done. And so the day-to-day duties, who made the schedule, the policies, none of that differed because the job had to get done and get done consistently across providers, because inmates move through the system and we needed to have some consistency across the system * * *.

(May 8, 2015 Tr. at 122-23.)

{¶ 46} 32. Dr. Burns testified that the need for more closely codified and consistent treatment by mental health providers was due to the limited formulary appropriate for the prison environment and the high risk of drug abuse by patients themselves, and the risk of coercion by other inmates to obtain drugs of abuse.

{¶ 47} 33. ODRC provided office supplies and materials for relator's work. Dr. Burns testified that this was required because of the need to preserve security and control potential contraband in a prison environment.

{¶ 48} 34. Dr. Burns testified that the clock-in and clock-out requirements for independent contractors were necessitated by the need for security personnel to keep track of persons within the institution in case of a security problem.

{¶ 49} 35. Relator commenced the present action by complaint filed August 15, 2016 naming the board as respondent.

{¶ 50} 36. Relator filed his amended complaint on September 27, 2016, again naming only the board as respondent.

{¶ 51} 37. By order dated October 11, 2016, the magistrate granted the motion of ODRC to intervene as respondent and brief the case.

Discussion and Conclusions of Law:

{¶ 52}        The board is vested with authority over service credit determinations: "In all cases of doubt, the public employees retirement board shall determine under section 145.036, 145.037, or 145.038 of the Revised Code whether any person is a public employee, and its decision is final."  R.C. 145.01(A) "The retirement board's decision on any determination conducted pursuant to this rule shall be final and determinative." Ohio Adm.Code 145-1-11(D).

{¶ 53}        Mandamus is an appropriate remedy where a statutory right of appeal does not exist to correct an abuse of discretion by an administrative body.  *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 24, citing *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219.  There is no statutory right to appeal the board's denial of service credit, and mandamus is therefore an appropriate remedy.  *Id.,* citing *State ex rel. Schaengold v. Ohio Pub. Emp. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760.

{¶ 54}        To obtain a writ of mandamus in the present case, relator must establish that the board abused its discretion by denying his request for OPERS service credit.  *Id.* at ¶ 25.  "A clear legal right exists where the board abuses its discretion by entering an order which is not supported by 'some evidence.' "  *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio,* 49 Ohio St.3d 224, 225 (1990). The term "abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable attitude on the part of a tribunal or administrative body; no judicial or quasi-judicial body, however, has within its discretion to commit a prejudicial error of law.  *State v. Akbari,* 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70; *Pontius v. Riverside Radiology & Interventional Assocs., Inc.,* 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15; *Hirsi v. Davis Creek Auto Sales,* 10th Dist. No. 15AP-415, 2016-Ohio-7569, ¶ 41.  In common with other applications for a writ of mandamus, relator bears the burden of providing evidence that he has a clear legal right to be considered a public employee, that the board had a clear legal duty to

declare him a public employee for the period in question. *See, e.g., State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967).

{¶ 55} Prior to August 7, 2014, pursuant to R.C. 145.037(B)(1) and 145.037(D)(1), an individual in relator's position could challenge an independent contractor designation made by an OPERS public employer regarding eligibility for OPERS employment credit.

{¶ 56} R.C. 145.012 defines the term "public employee" for purposes of eligibility for retirement benefits, and pursuant to authority granted by that statute, OPERS promulgated Ohio Adm.Code 145-5-15(A), renumbered in 2003 as Ohio Adm.Code 145-1-42(A), which defines the distinction between "contract employees," who are public employees and participate in OPERS retirement, and "independent contractors," who are not eligible for OPERS credit. The section provides as follows with respect to the distinction between the two:

> (1) "Contract employee" means an individual who:
>
> (a) Is a party to a bilateral agreement which may be a written document, ordinance, or resolution that defines the compensation, rights, obligations, benefits and responsibilities of the individual as an employee;
>
> (b) Is paid earnable salary at a specific periodic rate for services personally performed for the public employer and who appears on the employer's payroll;
>
> (c) Is eligible for workers' compensation or unemployment compensation;
>
> (d) May be eligible for employee fringe benefits such as vacation or sick leave;
>
> (e) Is controlled or supervised by personnel of the public employer as to the manner of work; and
>
> (f) Should receive an Internal Revenue Service form W-2 for income tax reporting purposes.
>
> (2) "Independent contractor" means an individual who:

(a) Is a party to a bilateral agreement which may be a written document, ordinance, or resolution that defines the compensation, rights, obligations, benefits and responsibilities of both parties;

(b) Is paid a fee, retainer or other payment by contractual arrangement for particular services;

(c) Is not eligible for workers' compensation or unemployment compensation;

(d) May not be eligible for employee fringe benefits such as vacation or sick leave;

(e) Does not appear on a public employer's payroll;

(f) Is required to provide his own supplies and equipment, and provide and pay his assistants or replacements if necessary;

(g) Is not controlled or supervised by personnel of the public employer as to the manner of work; and

(h) Should receive an Internal Revenue Service form 1099 for income tax reporting purposes.

(3) "Personal service contract" means the same as a contract for an independent contractor.

{¶ 57} Because OPERS is a creature of statute and has no authority beyond that expressly or impliedly conferred by the legislature, *Dreger v. Pub. Emps. Retirement Sys.*, 34 Ohio St.3d 17, 20-21 (1987), terms for membership benefits are determined under the statutory scheme without reference to other tests applicable in other employment contexts. In *Schaengold*, the Supreme Court of Ohio analyzed the eligibility of an independent contractor for retirement benefits, and referred only to the eight-part test set forth in Ohio Adm.Code 145-1-42. The magistrate declines to apply the competing standards proposed by relator, including those arising in Ohio workers' compensation cases and federal tax cases.

{¶ 58} The magistrate further notes that there is scant authority on the question of whether the Ohio Adm.Code 145-1-42(A)(2) factors are strictly conjunctive, that is,

whether each and every factor must be fully met.   The best guidance found on the question is in *Schaengold*, in which the Supreme Court upheld the board's determination and seems to approve of a balancing approach applied by the board:

> In so concluding, the board "determined that the factors weighed more heavily in concluding that the service is more of that of an independent contractor rather than a public employee, including the facts that Mr. Schaengold is not required to report to the court on a daily basis, he has the option of passing on assignments if he has scheduling conflicts, and represents individual clients in the Dayton Municipal Court on days when he is not on the bench."

*Schaengold* at ¶ 6.

{¶ 59} Applying solely the statutory and regulatory standard, the magistrate concludes in the present case that there is "some evidence" to support the board's determination that relator was not a public employee eligible for OPERS membership during the time he worked as a psychiatrist with ODRC because he was an independent contractor rather than a contract employee.

{¶ 60} It is indisputable that relator entered into four bilateral contracts with ODRC, satisfying subsection (a) of Ohio Adm.Code 145-1-42(A)(2).   The contracts expressly state that the hours worked were an open term agreed to by the parties.   Relator disagrees with the board's conclusion that the successive contracts were open to negotiation, and asserts that this undermines that bilateral nature of the contract.   The hearing officer properly considered this in light of the contract language and determined that relator had an ability to negotiate hours and pay in a manner that was not available to civil service employees.   Relator was thus able to negotiate the hours he worked, and could elect to not enter into the initial contract, then not enter into further contracts with ODRC.   There is some evidence to support the board's conclusion on this factor.

{¶ 61} Applying Ohio Adm.Code 145-1-42(A)(2)(b), the evidence establishes that relator was paid a "fee, retainer or other payment by contractual arrangement."   While relator points out that his pay was on occasion docked for time as would happen with  civil service staff, the contract expressly states the independent contractor performance would be monitored based upon, inter alia, timekeeping. Dr. Burns' testimony establishes the

security concerns underlying this policy in a prison environment. There is some evidence to support the board's conclusion on this factor.

{¶ 62} Applying Ohio Adm.Code 145-1-42(A)(2)(c), relator testified he did not know whether he was eligible for workers' compensation or unemployment. The department did not consider relator eligible for workers' compensation or unemployment compensation. There is some evidence to support the board's conclusion on this factor.

{¶ 63} Applying Ohio Adm.Code 145-1-42(A)(2)(d), relator received no fringe benefits, such as vacation, sick leave, or health insurance, with the sole exception of the professional liability insurance provided by ODRC. There is some evidence to support the board's conclusion on this factor.

{¶ 64} Applying Ohio Adm.Code 145-1-42(B)(2)(e), it is undisputed that relator did not appear on ODRC's payroll for the period in question. There is some evidence to support the board's conclusion on this factor.

{¶ 65} Applying Ohio Adm.Code 145-1-42(A)(2)(f), relator's testimony was unrebutted that ODRC did furnish him with supplies and equipment to use within the institution. The hearing officer noted that, to the extent that ODRC provided necessary materials within the prison, concerns regarding introduction of outside materials into the prison environment explained application of such a restriction to an independent contractor. There is some evidence to support the board's conclusion on this factor.

{¶ 66} Applying Ohio Adm.Code 145-1-42(A)(2)(g), which the magistrate considers the most disputable factual element heard before the board, the question is whether relator's duties were "controlled or supervised by personnel of the public employer, as to the manner of work."

{¶ 67} Dr. Burns' testimony, consistently with relator's testimony, established that relator clocked in and clocked out, carried an ID badge, submitted to required training, and set his schedule according to appointments set by ODRC nursing staff. He attended departmental meetings and participated in quality assurance activities, all pursuant to contractual requirements. His treatment decisions for inmate patients were substantially affected by ODRC policies or guidelines.

{¶ 68} The magistrate finds that any degree of control exercised by ODRC is not inconsistent with degree of control to be expected in a specialized institutional

environment to ensure consistency of care and accommodate the special security concerns when dealing with prison inmate patients. The hearing officer correctly noted that the secure nature of prisons and the expressed details of relator's contracts provided for this level of detailed organization.

{¶ 69} Finally, applying Ohio Adm.Code 145-1-42(A)(2)(h), relator was not subject to income tax withholding and ODRC did not pay into Social Security. Relator received IRS form 1099's, not W-2's, for his work, and paid his self-employment tax accordingly. There is some evidence to support the board's conclusion on this factor.

{¶ 70} In conclusion, the magistrate finds that in the context of a specialized institutional environment, the hearing officer's conclusions on these questions, properly adopted by the board, were supported by some evidence. Despite some variance from the Ohio Adm.Code 145-1-42(A)(2) factors, attributable to the necessities of prison mental health care, the fact that relator's duties, responsibilities, and working conditions were largely identical with his civil service colleagues is not dispositive. The magistrate accordingly finds there is some evidence when applying the factors under Ohio Adm.Code 145-5-15(A)(2) to conclude that the board did not abuse its discretion in finding that relator is not entitled to OPERS membership benefits for the period in question. The magistrate recommends this court deny the requested writ of mandamus. Relator's request for an award of attorney fees is denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).